Kenneth R. WORLEY, By and Through his Next Friend and Father, Carl Worley, (Plaintiff) Respondent,

v.

TUCKER NEVILS, INC., a corporation, and Angela Youngblood, Administratrix of the Estate of Randy Wayne Youngblood, Deceased, Defendants,

Tucker Nevils, Inc., a corporation, Appellant.

No. 58305.

Supreme Court of Missouri, En Banc.

Dec. 10, 1973.

Motion for Rehearing Denied Jan. 14, 1974.

Donnelly, C. J., concurred and filed opinion.

Bardgett, J., dissented and filed opinion in which Seiler and Morgan, JJ., concurred.

Thurman, Nixon, Smith & Howald, Robert Lee Smith, Hillsboro, for respondent.

Dearing, Richeson, Roberts & Wegmann, Roland A. Wegmann, John A. Schneider, Hillsboro, for appellant.

HOLMAN, Judge.

Plaintiff was seriously injured in a collision involving a motorcycle upon which he was a passenger. Also involved in the occurrence was a school bus, another motorcycle, and a car. The driver of the motorcycle upon which plaintiff was riding (Randy Youngblood) died as a result of the collision. Plaintiff filed this suit against the estate of the deceased driver, Roy Welshon, the driver of the other motorcycle, Gene E. Bieser, the school bus driver, and Tucker Nevils, Inc., the owner of the car. Before trial, plaintiff dismissed, without prejudice, as to Bieser and Welshon. It was stipulated that plaintiff and Welshon had agreed on a settlement for $5,500. A trial resulted in a verdict in favor of the Youngblood estate, and a verdict for plaintiff and against Tucker Nevils, Inc. (hereinafter referred to as defendant), for $105,500. Defendant duly appealed from the judgment to the Missouri Court of Appeals, St. Louis District. That court adopted an opinion written by Smith, P. J., affirming the judgment.

Upon appellant's application we ordered the case transferred to this court. It will be determined here "the same as on original appeal." Mo.Const., Art. V, § 10, V. A.M.S. We reverse and remand.

The first point briefed by Tucker Nevils is that the trial court erred in failing to sustain its motion for a directed verdict. We agree with the disposition of this point by the court of appeals and therefore adopt the following portion of its opinion:

"Defendant's initial contention is that no submissible case of negligence against it was made on the theory submitted. That theory was a sudden stop or sudden slowing without the giving of an adequate and timely warning.

"In Tucker v. Blankenmeier, 315 S.W.2d 724 [2, 3] (Mo.1958), the court stated: 'The sudden and abrupt stopping or slowing of an automobile is not, under all circumstances, evidence of negligence. Such slowing or stopping will constitute negligence if there is no emergency shown to justify it, and if it is made without giving a reasonably adequate and timely warning to the drivers of vehicles following so closely behind that they may be unable (but for the warning) to avoid a collision.' See also Matthews v. Mound City Cab Co., 205 S.W.2d 243 (Mo.App.1947).

"We will review the evidence favorable to the plaintiff in the light of this statement. Plaintiff was a passenger on the motorcycle of Randy Youngblood, who was killed in the accident. They were proceeding from Festus to De Soto on Highway 110 in company with Roy Welshon, also riding a motorcycle. After turning off of Highway 67 onto 110 they came up behind defendant's vehicle. After leaving 67, 110 goes sharply downhill and curves. It then swings out into a 'straightaway' which is comparatively straight and level. Defendant's vehicle operated by Charles Birch, maintained a speed of 35 miles per hour throughout this stretch. To do so, Birch

rode his brake down the hill, around the curve, and into the straightaway right up to the point of collision. During this period his rear brake light was on constantly. Youngblood and Welshon followed Birch down the hill, around the curve, and into the straightaway at 35 miles per hour, maintaining a distance of 30 to 35 feet from the rear of Birch's car. The motorcycles were abreast of each other, with Welshon to the shoulder side of the westbound lane. Both motorcycles were in the westbound lane at all times. Highway 110 is a two-lane highway. As the car and motorcycles approached the accident site, a school bus was proceeding in the eastbound lane of Highway 110, with its flashing warning lights activated. While the school bus was still proceeding at 15 to 20 miles per hour and in close proximity to Birch, the Birch vehicle suddenly stopped or reduced its speed to one mile per hour. At that point, the motorcycles closed to within five to ten feet of the Birch vehicle; plaintiff saw the Welshon boy cut his wheel to the left and plaintiff remembered nothing further. The physical evidence indicated that no contact occurred with the Birch vehicle, but that contact was made with the front fender of the school bus. The Welshon motorcycle was extensively damaged; the Youngblood vehicle was nearly demolished. The scheduled stop for the bus was approximately 103 feet to the east of the accident site at the only driveway along the straightaway. The bus left 28 feet of skid marks; the Birch vehicle left none, nor did the motorcycles. There was evidence from the state highway patrolman that a vehicle could be stopped quite suddenly without leaving skid marks if the brakes were not locked. Birch admitted that he knew he need not stop for a school bus when the warning lights were flashing and that he should not stop until the 'stop arm' was pushed forward. His testimony was that the school bus had come to a gradual stop and he did the same, and that when he looked into the rear view mirror after stopping he saw the motorcycles several hundred feet back, locked together and sliding down the hill.

"The evidence detailed above warrants the conclusion that no emergency existed sufficient to warrant a sudden stop or slowing. The evidence also supports a conclusion that Birch did in fact suddenly stop or slow his vehicle. Was there an adequate and timely warning of this stop as a matter of law? We believe there was not, and that a jury could find the absence of such warning. Defendant points to the illumination of the brake light for some one-half to three-fourths of a mile before the accident. But the evidence is clear that the braking by Birch was not to stop or slow his vehicle, but to prevent it from accelerating as he came down the hill and around the curve. Throughout the period while his brake light was on, Birch's car maintained a constant speed of 35 miles per hour. Under those circumstances a jury was warranted in finding that the brake light did not signal an intention to stop or slow suddenly, but simply an intention not to accelerate. Nor does the presence of the school bus add to the 'totality of the circumstances,' as defendant contends. There was no obligation nor reason for Birch to stop his vehicle for a moving school bus as he himself admitted. There was sufficient evidence to support plaintiff's submission.

■ "Defendant contends there was no showing of proximate causation because the record is silent on who hit who first, and shows no contact with defendant's car. The evidence supports the conclusion that when Birch suddenly stopped, Welshon turned his wheel to the left to avoid running into Birch. Thereafter Welshon collided with someone, and since Youngblood's vehicle was between him and the school bus it is reasonable to conclude he hit Youngblood. Regardless of what precisely happened, it is reasonable to conclude that the act of Birch in suddenly stopping set in motion a chain of circumstances resulting in the collision and plain-

tiff's injuries. That is enough to establish proximate cause. Thebeau v. Thebeau, 324 S.W.2d 674 (Mo.1959); Lafferty v. Wattle, 349 S.W.2d 519 (Mo.App.1961). Plaintiff made a case of negligence against defendant."

Defendant's next contention is that the court erred to its prejudice in refusing its proffered Instruction No. A, which reads as follows:

"Your verdict must be for defendant Tucker Nevils, Inc., whether or not driver Birch was negligent, if you believe:

"First, plaintiff knew facts from which it was reasonably apparent that he was in immediate danger, and

"Second, plaintiff had time to warn Randy Wayne Youngblood and failed to do so, and

"Third, such conduct of plaintiff was negligent; and

"Fourth, such negligence directly caused or directly contributed to cause any damage plaintiff may have sustained.

"The term 'negligence' as used in this instruction means the failure to use that degree of care which an ordinarily prudent boy of the same age, capacity and experience would use under the same or similar circumstances. M.A.I. 32.03, 11.-04, Modified."

Defendant says that there was evidence to support the instruction and hence the issue of plaintiff's contributory negligence should have been submitted to the jury.

 In determining whether there was evidence to support the giving of said instruction we must consider the evidence in the light most favorable to defendant, give defendant the benefit of any favorable inferences that may reasonably be drawn therefrom, and disregard plaintiff's evidence unless it tends to support the ground of contributory negligence the instruction would have submitted. Rickman

v. Sauerwein, 470 S.W.2d 487 [1, 2] (Mo. 1971). Some of the rules here involved, and the cases which have formulated or stated them, are collected in Fann v. Farmer, 289 S.W.2d 144, 147, 148 (Mo. App.1956), as follows: "'"[w]hen dangers, which are either reasonably manifest or known to an invited guest, confront the driver of a vehicle, and the guest has an adequate and proper opportunity to control or influence the situation for safety, if he sits by without warning or protest and permits himself to be driven carelessly to his injury, this is negligence which will bar recovery."' Ezell v. Kansas City, Mo., 260 S.W.2d 248, 250(3); Knox v. Weathers, 363 Mo. 1167, 257 S.W.2d 912, 915(5); Kaley v. Huntley, 333 Mo. 771, 63 S.W.2d 21, 24(10). However, a guest in an automobile is required to exercise only ordinary care for his own safety [State ex rel. Alton R. Co. v. Shain, 346 Mo. 681, 143 S. W.2d 233, 238(9); Davis v. F. M. Stamper Co., 347 Mo. 761, 148 S.W.2d 765, 768(3)]; and, while the law does not permit a guest to intrust his safety absolutely to the driver, regardless of impending danger or apparent lack of ordinary caution on the driver's part, it does not require the guest to exercise the same vigilance as the driver nor impose upon the guest the same obligation to look for danger. Smith v. St. Louis-San Francisco Ry. Co., 321 Mo. 105, 9 S.W.2d 939, 946(6); Setzer v. Ulrich, Mo.App., 90 S.W.2d 154, 157(9); Hill v. Missouri Pac. R. Co., Mo. App., 40 S.W.2d 741, 743. Our courts have said repeatedly that 'it is a matter of common knowledge that under ordinary circumstances such occupants do largely rely upon the driver, who has the exclusive control and management of the vehicle, exercising the required degree of care, and for that reason courts are not justified in adopting a hard and fast rule that they are guilty of negligence in doing so'; and, similarly we read that '(i)n the absence of visible lack of caution of the driver or known imminence of danger, a guest may ordinarily rely upon a driver who has ex-

clusive control of the vehicle.' Toburen v. Carter, Mo., 273 S.W.2d 161, 164(2)."

In connection with this point some additional facts should be stated. The patrolman testified that "if I see a man's brake lights on, I expect him to stop at any time"; that he wouldn't be surprised if a car stopped suddenly even though the driver had been "riding his brakes, maintaining his speed down the hill for a quarter of a mile"; that it is "very easy to lay a motorcycle over"; that the school bus filled its lane of travel and the flashing lights are a warning to the traveling public that the bus is preparing to stop. It should also be noted that plaintiff testified that he was riding behind Randy holding around his waist; that he could see over Randy's shoulder; that he didn't say anything to Randy and Randy did nothing to slow the motorcycle and didn't slow down before the collision; that as the motorcycle entered the straightaway he saw the approaching school bus also entering the straightaway with its flashing lights on.

■ We have concluded that the evidence was sufficient to support the giving of the contributory negligence instruction. This because a jury reasonably could have found that plaintiff and Randy were in a position of immediate danger from the time the motorcycle entered the straightaway until it reached the point of collision, a distance of 469 feet; that during that time the brake lights on defendant's car were on, indicating that it might stop at any time, and the red flashing lights of the bus were on, which indicated that it might stop at any time; that the motorcycle was following too closely behind defendant's car, i. e., 30 feet while traveling 52 feet per second; that Randy's motorcycle was "boxed in," in that in the event of a sudden stop of defendant's car or other emer-

gency, it could not swerve to the left because of the school bus, and could not swerve to the right shoulder because of the position of the other motorcycle; that plaintiff made no protest or warning that the motorcycle should be slowed so as to increase the distance between the vehicles, and Randy made no effort to do so; that if such a warning had been promptly made and acted upon by Randy the collision and injury could have been avoided. The jury also could have believed Mr. Birch's testimony that his car had come to a gradual stop; that the school bus had almost stopped and could have considered such in connection with plaintiff's testimony that Randy had not slowed the motorcycle and that plaintiff had made no request that he do so. We think the jury could also have considered that a motorcycle is a more dangerous vehicle than an automobile in that it only has two wheels and, in the event of accident, there is nothing to protect the rider from contact with the pavement or other vehicles. See State v. Cushman, 451 S.W.2d 17[3] (Mo.1970).

As indicated, we do not intend to say that plaintiff was guilty of contributory negligence as a matter of law, but rule that there was ample evidence to warrant the submission of that issue to the jury.[1]

■ Plaintiff, in contending that the evidence was not sufficient, says that the words "immediate danger" mean the same as imminent peril as used in humanitarian cases and hence there must have been a showing that the danger was certain, immediate, and impending; that the danger was not certain until it was too late for a warning to have been effective. We do not think there was any intent to change the law relating to the duty of a guest to warn when M.A.I. 32.03 was approved, and certainty of danger and injury (absent

1. It has occurred to us that a reader might question whether the failure to give the contributory negligence instruction was prejudicial in view of the fact that the jury returned a verdict in favor of Randy's estate. The answer is that the sole submission against the estate was that Randy "drove on the wrong side of the road," which submission had questionable evidentiary support and was not an element we have considered on the issue of plaintiff's alleged contributory negligence.

evasive action) has not been required by the cases. Moreover, the phrase "immediate danger" is modified by the words "reasonably apparent," which tends to limit any indication that certainty is a requirement.

■ Plaintiff also contends that, in any event, failure to warn could not have contributed to the cause of plaintiff's injury because Randy had all the knowledge that plaintiff had and hence a warning would have accomplished nothing. We think this contention is without merit; Randy is deceased, and we cannot know what he saw or knew and should not speculate in that area. Furthermore, even if it is assumed that he knew of the danger, he was not taking any action to avoid it and hence plaintiff should have protested or warned in an effort to obtain action in that regard.

Other contentions of trial error will not be considered since they will not likely recur upon another trial.

Defendant has briefed the contention that the verdict was excessive and that a remittitur should be required. Obviously, in view of our disposition of the appeal, that point need not be discussed. However, one reason for transferring the case here was our disagreement with certain statements in the court of appeals opinion relating to the remittitur doctrine. We deem it advisable to express our views concerning that subject before concluding this opinion.

The court of appeals opinion contained the following statement: "We have heretofore expressed our reluctance to interfere through remittitur in Effinger v. Bank of St. Louis, 467 S.W.2d 291[6] (Mo.App. 1971), wherein we said: 'Where the verdict has the approval of the trial court, it is conclusive on appeal unless it is so shockingly and grossly excessive or inadequate as to indicate that the amount of the verdict is due to passion and prejudice.' What we said there, and what we say here, is that this district of the Court of Appeals will henceforth decline to exercise its discretionary power to review the amount of the verdict through the remittitur device. If the verdict is so grossly excessive or inadequate as to demonstrate bias and prejudice the entire case must be remanded for new trial on all issues. If it is not, we will not reduce the judgment by remittitur."

■ There are two types of attacks that are made upon verdicts alleged to be excessive. One is that the verdict is so grossly excessive as to indicate bias and prejudice on the part of the jury. If such a contention is found to be meritorious the verdict cannot stand in any amount and a new trial must be ordered. Skadal v. Brown, 351 S.W.2d 684 (Mo.1961). The other type of attack is that the verdict is merely excessive. "A verdict which is excessive is one in which the jury made an honest mistake in weighing the evidence as to the nature and extent of the injury and in fixing the damages and awarded a sum disproportionate to the amounts usually awarded for comparable injuries under the rule of uniformity. Such a mistake can be cured and corrected without a new trial by requiring a remittitur of a portion of the amount awarded." Skadel v. Brown, 351 S.W.2d l. c. 689. The remittitur doctrine has long proved to be a useful device for both the trial and appellate courts of this state in keeping awards from exceeding the upper limit of fair and reasonable compensation. It is said to be a desirable doctrine because it tends to hold verdicts within uniform limits and often avoids the granting of new trials which inevitably result in delay, uncertainty, and additional expense. Jones v. Pennsylvania R. Co., 353 Mo. 163, 182 S.W.2d 157 (1944). A discussion of the power of the court "to require a remittitur as a condition of affirmance" appears in the early case of Cook v. Globe Printing Co. of St. Louis, 227 Mo. 471, 127 S.W. 332 (1910). It is true that in recent years the extreme growth of inflation in this country has caused the courts of this state to approve much larger verdicts than in the past, and

hence they have seldom had to resort to the use of remittiturs. The remittitur doctrine, however, is firmly entrenched in the operation of our judicial system and should be retained, and requests of litigants for its application should be considered by all the courts of this state until such time as it is rejected by this court.

The statement quoted from Effinger, supra, is not correct when applied to excessive verdicts. Similar statements have sometimes appeared in cases involving a contention that the verdict was inadequate, and are perhaps applicable in that situation because we have never adopted an "additur" doctrine. We disapprove of the rulings of the Court of Appeals that it will no longer consider contentions of excessiveness wherein the remittitur doctrine is relied upon for correction of the alleged error.

The judgment is reversed and the cause remanded for a new trial.

HENLEY and FINCH, JJ., concur.

DONNELLY, C. J., concurs in separate concurring opinion filed.

BARDGETT, J., dissents in separate dissenting opinion filed.

SEILER and MORGAN, JJ., dissent and concur in separate dissenting opinion of BARDGETT, J.

DONNELLY, Chief Justice (concurring).

I concur in the principal opinion but I wish to reserve the right to consider, in an appropriate case, the question whether appellate courts in Missouri should retain the power to order remittiturs where they conclude verdicts are excessive.

BARDGETT, Judge (dissenting).

I respectfully dissent from the holding in the principal opinion that the trial court erred in refusing to give the contributory negligence instruction offered by defendant and adopt as part of this dissent the following portion of the opinion in the Court of Appeals, St. Louis District, written by Smith, Presiding Judge of Division Two:

"Defendant also premises error on the refusal of the trial court to give a contributory negligence instruction offered by it. The proposed instruction was based upon M.A.I. 32.03 modified. It required a finding that plaintiff knew facts which made it reasonably apparent he was in immediate danger; that he had time to warn Youngblood and failed to do so and was thereby negligent. 'Immediate danger' is the M.A.I. Committee wording for what previously was called 'imminent danger.' 'Imminent danger' is 'certain and immediate danger' and does not encompass remote or possible danger. In Happy v. Blanton, Mo., 303 S.W.2d 633[9, 10], the duty of a passenger was stated as follows: 'The duty of a guest, in the exercise of ordinary care, is to warn the driver of known imminence of danger, and, when the driver has been or is exercising a visible lack of caution, to take such action as an ordinarily or reasonable prudent and careful person would take under the same or similar circumstances, which could, among other things, include the maintenance of a lookout for dangerous situations.'

"Whatever Youngblood's 'tailgating' may have been it did not create a situation of immediate danger until Birch suddenly stopped his car. Until that point it created a possible danger, but not a certain one. Defendant did not attempt to submit upon the absence of a visible lack of caution by Youngblood, but solely upon a failure to warn upon the appearance of immediate danger. Such a submission is unwarranted by the evidence. Defendant's evidence was that after he stopped he observed the motorcycles already locked together and sliding out of control 200 feet behind him. This evidence does not establish that plaintiff ever was in immediate danger as a result of Birch's stop. Plain-

tiff's evidence placed the Youngblood motorcycle 35 feet behind Birch at 35 miles per hour when Birch suddenly stopped. At that speed the motorcycle was traveling 51 feet per second, and there is no evidence that a warning could have averted the accident at that time. Nor is there any evidence that plaintiff was aware of any danger of which Youngblood was unaware. The court did not err in refusing defendant's proffered instruction."

My further reasons for believing that the court did not err in refusing the contributory negligence instruction are as follows:

Plaintiff's theory of recovery as submitted in instruction No. 4 is that defendant *suddenly* slowed his automobile without giving a timely warning of such intent. It was essential to plaintiff's case that the jury find that (1) the defendant suddenly slowed the car and (2) that defendant did not give a timely warning. All of plaintiff's evidence was that (1) the motorcycles were following defendant at a distance of about 35 feet going about 30–35 miles per hour, (2) defendant was proceeding steadily at about that same speed, (3) that defendant had kept his brake lights on all the time he traveled the downhill S curve and the straight stretch of Highway 110 up to the time defendant suddenly slowed or stopped, (4) that the roadway is a rather steep downhill grade throughout the S curve and the straight stretch all the way to the collision point, and (5) that the approaching east-bound school bus did not put its stop board out but did have its flashing light on.

Defendant's evidence did not contradict the plaintiff's evidence as to the downhill grade or as to the fact that the brake lights on defendant's car were on throughout the S curve and the straight stretch. However, the defendant's evidence was completely at war with plaintiff's theory. Defendant's evidence was that he came to a gradual stop and that after he stopped he saw the motorcycles some 200 feet behind

him locked together and sliding westward down the road. Defendant's evidence was that the motocycles were not anywhere close to defendant's car as defendant proceeded out of the curve and down the straight stretch.

There is nothing in *defendant's* evidence that supports any finding that the plaintiff was in immediate danger 469 feet from collision point or at any other time by reason of the distance plaintiff's motorcycle was following defendant's car or the speed any vehicle was traveling. If defendant is correct, then plaintiff was injured for reasons having nothing to do with defendant's conduct at all,—the motorcycles simply collided together some 200 feet east of defendant's car, turned over, and hit the school bus. The principal opinion suggests that defendant can have the benefit of his testimony that he gradually slowed his car and did not suddenly stop and that the school bus had almost stopped in support of the contributory negligence instruction offered in this case.

I agree that a party is entitled to the benefit of his own testimony but here the basic concept needed to support the contributory negligence instruction is that the motorcycles were some 30–35 feet behind defendant's car (not 200 feet) and that defendant suddenly slowed (not that he gradually slowed to a stop) and consequently I do not believe that defendant's evidence can be considered as giving any support to the contributory negligence instruction. This is because defendant's evidence is completely at war with the evidence necessary to support the contributory negligence concept embodied in that instruction in this case. No one suggests that if the motorcycles were 200 feet behind defendant there would have been any need for plaintiff to warn his driver of the presence of defendant's vehicle some 200 feet down the road.

When did the immediate danger of injury occur in this case? First of all, no one contends there would have been any injury if defendant's car had continued on past

the school bus. Second, there is no contention that plaintiff was entitled to a verdict if defendant came to a gradual, normal stop. Instruction No. 7 told the jury that their verdict must be for defendant if they did not believe driver Birch was negligent as submitted in instruction No. 4. Instruction 4 authorized a verdict for plaintiff only if the jury found that Birch *suddenly* slowed his car without giving an adequate warning.

The principal opinion's holding that there was a continuing immediate danger because the motorcycles were following the car at a distance of about 30 feet, while the car continued to have its brake lights on, and the bus was approaching with its flashing lights on, is premised on the conclusion that this situation could reasonably indicate that the car might stop at any time. I agree that the situation was such that the car might be stopped at some time, but that alone would not present any immediate danger if the car came to a normal or gradual stop. There is no evidence that if the car had come to a normal stop the motorcycles could not have done the same, in which case there would have been no accident at all. The principal opinion, however, after stating that the circumstances indicated that the car might stop, immediately proceeds to suggest that knowledge that a car might stop is knowledge that the driver will violate the law by *suddenly* stopping without giving an adequate warning. In so doing, the principal opinion seems to consider a normal, gradual stop to be the same as a sudden, abnormal stop. Common experience dictates that automobiles frequently follow rather closely and particularly when approaching a stop sign or in heavy traffic. In these circumstances, the following driver realizes the car ahead may stop at some point but does not anticipate that the lead car will stop suddenly for wholly unpredictable, unforseeable and unapparent reasons.

In the instant case, the proffered instruction requires plaintiff be possessed of certain knowledge which is broadly stated in the instruction and perhaps even constitutes a roving commission to the jury. In any event, the instruction requires a finding that "plaintiff *knew* facts from which it was *reasonably apparent* that he was in *immediate* danger." (Emphasis added.) What facts did plaintiff know? He knew that the motorcycle was going about 35 miles per hour about 30 feet behind a car traveling at the same speed on a downhill road and that the car had its brake lights on for about one mile and that nothing untoward had occurred. He knew there was a school bus approaching with its flashing lights on and that the school bus would stop at the White family's driveway; that the stop board of the bus was not put out; that the bus was still going about 15–20 miles per hour at the time the defendant's car suddenly stopped; that the defendant's car came to this stop at or near a speed restriction caution sign 100 feet or more (actually 103 feet) past (west) of the White driveway; that plaintiff had ridden school buses since the first grade of school and had never seen a car stop just because the flashing lights of the bus are on; that cars stop only after a bus stops and after the stop board on the bus is put out; that plaintiff's driver Youngblood also knew the bus would stop at the White driveway; and that at the time the defendant's auto suddenly stopped, defendant's automobile and plaintiff's motorcycle had already passed the White driveway.

The refused instruction stated that the term "negligence" as used therein "means the failure to use that degree of care which an ordinarily prudent boy of the same age, capacity, and experience would use under the same or similar circumstances." There is nothing in plaintiff's evidence or defendant's evidence which supports a finding that plaintiff knew facts from which it was reasonably apparent that he was in immediate danger—that he knew facts from which a boy of his age, capacity, and experience would know that the defendant's car would suddenly stop. To the contrary, plaintiff's testimony dem-

onstrated that from his experience he would reasonably believe the defendant's car would not stop at all, much less suddenly stop.

Was there any other substantial evidence which would support the finding required by the refused instruction?

The State Highway patrolman who testified stated that school bus drivers are instructed by the Highway Patrol that cars are *not* to stop on the highway when the bus just has its flashing warning lights on; that it is legal for an automobile driver meeting a school bus which has its flashing lights on to continue on and pass the bus; that the standard procedure is to stop only when the bus is completely stopped and the stop board is out. The patrolman also stated that his personal experience is that if a car has its brake lights on that he would not be surprised if it suddenly stopped.

The defendant testified that the bus had its flashing warning lights on but the stop arm had not been put out and that he would not stop if only the flashing lights were on; that he stopped because the school bus actually stopped and that his (defendant's) stop was gradual and not a sudden stop.

I do not believe that the mere isolated personal experience of a State Highway patrolman constitutes evidence that, when brake lights are on over a long distance on a downhill grade under the circumstances of this case, an ordinarily prudent person would reasonably expect that car to *suddenly* stop on the highway for no apparent reason. I say "no apparent reason" because all of the evidence is that a car would not stop and would not be expected to stop, either gradually or suddenly, when approaching a moving oncoming school bus that has its flashing warning lights on, and this, it seems to me, is the dominant fact that plaintiff knew. Plaintiff was corroborated in this belief by the highway patrolman's testimony that a car would not stop just because the flashing lights of the bus

were on, as well as the testimony of the defendant who stated he stopped because the school bus was *stopped* and not just because the bus had its flashing warning lights on. But defendant cannot utilize his own testimony that the bus had stopped and he thereafter gradually stopped in support of the contributory negligence instruction in this case because as a part and parcel of defendant's position is his testimony that after he stopped the two motorcycles were still 200 feet behind him and had already collided with each other. As stated supra, the account of this accident as given by defendant is completely at war with the account given by plaintiff and all of the other evidence in the case.

Thus the case is reduced to a situation, with respect to the contributory negligence instruction, to one where a lead automobile traveling at about 30–35 miles per hour which has had its brake lights on over a considerable distance because it is going down a steep hill stops suddenly on an open highway for no apparent or forseeable reason at a time when two motorcycles are about 30 feet behind it traveling at the same speed as the car. When, then, did the immediate danger arise? In my opinion it arose when defendant's car *suddenly* reduced speed and stopped. What facts could plaintiff have known that would lead him to believe that the car would *suddenly* stop? In my opinion, there were no facts from which plaintiff could have known defendant's car would *suddenly* stop prior to the sudden stop itself. And there was no evidence that the motorcycle drivers could not have safely stopped had defendant's car made a normal, gradual stop. What could plaintiff have done or said after the defendant's car started to suddenly stop to avoid injury to himself? In my opinion, absolutely nothing.

For these reasons I believe that the court did not err in refusing to give the contributory negligence instruction.

During oral argument, appellant withdrew point V of its brief which is "The

verdict is so grossly excessive as to indicate bias, passion and prejudice on the part of the jury; and in the alternative, the verdict is excessive by $65,000."

I agree that the courts of appeals must continue to entertain and adjudicate contentions of excessiveness which involve remittitur unless and until this court decides otherwise. However, I join in the view of Donnelly, C. J., that this is not an appropriate case to determine the question of whether Missouri should continue to allow appellate courts to order a remittitur when the appellate court concludes a verdict is excessive.