**Randal HAGEDORN,
Appellant/Respondent,**

v.

**Garry L. ADAMS, Respondent,**

**City of Lee's Summit, Missouri,
Respondent/Appellant,**

and

**Michael Cary, Respondent/Appellant.**

**No. WD 46203.**

Missouri Court of Appeals,
Western District.

March 16, 1993.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 27, 1993.

Application to Transfer Denied
June 29, 1993.

James D. Williamson, Jr., Independence, for appellant/respondent.

Robert O. Jester, Kansas City, for City of Lee's Summit, MO.

Claudio E. Molteni, Kansas City, for Michael Cary.

Robert O. Jester, Kansas City, for Garry L. Adams.

Before SMART, P.J., and SHANGLER and FENNER, JJ.

FENNER, Judge.

Appellant/respondent, Randal Hagedorn, appeals from a judgment entered in his favor after trial by jury in the amount of $20,000. Respondents/appellants, Michael Cary and City of Lee's Summit, Missouri, cross appeal.

Hagedorn was a passenger on a motorcycle driven by Michael Cary. Respondent, Garry Adams, was a police officer for the City of Lee's Summit.

While on duty on the evening of July 8, 1989, Officer Adams observed the motorcycle on which Hagedorn was a passenger exceeding the speed limit. A high speed chase ensued which ended in Officer Adams' patrol car striking Michael Cary's motorcycle and injuring Hagedorn. Hagedorn sued the other parties herein. In this appeal, Hagedorn argues ten instances of trial court error.

## HAGEDORN'S APPEAL

In his first point, Hagedorn argues that the trial court erred by allowing, over objection, the introduction of evidence of alcohol consumption by the driver of the motorcycle, Michael Cary.

Missouri case law establishes a distinction between the admissibility of evidence that a driver has merely been drinking and the admissibility of evidence that a driver was intoxicated. Evidence of actual intoxication is admissible when coupled with evidence of negligence because it bears directly on the issue of negligence. *Jones v. Freese*, 743 S.W.2d 454, 456 (Mo. App.1987). Evidence of mere drinking, as distinguished from intoxication, is admissible only when coupled with evidence of erratic driving. *Id.* When erratic driving is shown, consumption of alcoholic beverages becomes a factor for the jury to consider as a possible explanation for the erratic driving. *Id.* at 457.

Erratic driving entails something more than mere negligence. *Broderson v. Farthing*, 762 S.W.2d 548, 551 (Mo.App. 1989). Erratic driving connotes the abnormal, peculiar, unaccountable and aberrant operation of a vehicle. *Id.* Erratic driving is not the product of carelessness or of inattention, but is conduct so heedless of circumstances as to be attributable to some impairment of faculties or of function. *Id.* Speed, failure to reduce speed under cir-

cumstances warranting a reduction of speed, and racing on a city street have been held to be elements of erratic driving. *Bilzing v. Wentzel,* 726 S.W.2d 787, 790 (Mo.App.1987).

■ In the case at bar, the evidence showed that defendant Cary was initially observed exceeding the speed limit by approximately thirty miles per hour. As Cary was followed by Officer Adams, Cary drove into a driveway of a home where neither Cary nor his passenger, Hagedorn, lived. Cary stopped the motorcycle in the driveway, then circled through the yard of the home and stopped again. Cary then drove through another yard and back onto the street fleeing in the opposite direction from that which he had been traveling. Cary failed to yield to the patrol car which exhibited flashing lights and siren and fled at a high rate of speed through winding and hilly streets, slowing his motorcycle in an unsafe fashion under the circumstances. The police vehicle, which was in pursuit of the motorcycle, came over a hill, was unable to stop, and collided with Cary's motorcycle.

The evidence was sufficient to show that Cary's driving was erratic. Therefore, the trial court did not err by admitting evidence that Cary had been drinking. Hagedorn's first point is denied.

In his second point, Hagedorn argues that the trial court erred by overruling his objection and submitting Instruction No. 10 because the instruction lacked sufficient evidentiary support.

Instruction No. 10, as submitted to the jury, followed MAI 32.03 [1991 revision] and submitted as follows:

> In your verdict you must assess a percentage of fault to plaintiff Randal Hagedorn if you believe:
> First, plaintiff Randal Hagedorn knew facts from which it was reasonably apparent that he was in immediate danger, and
> Second, plaintiff Randal Hagedorn had time to warn defendant Cary and failed to do so, and
> Third, plaintiff Randal Hagedorn was thereby negligent, and

Fourth, such negligence directly caused or directly contributed to cause any damage plaintiff may have sustained.

■ In determining whether there was sufficient evidence to support the giving of this instruction, an appellate court must consider the evidence in the light most favorable to the defendant, giving the defendant the benefit of any favorable inferences that may reasonably be drawn from the evidence, and disregarding the plaintiff's evidence unless it tends to support the submission of the instruction. *Worley v. Tucker Nevils, Inc.,* 503 S.W.2d 417, 421 (Mo. banc 1973).

■ In the absence of visible lack of caution of the driver or known imminence of danger, a guest passenger may ordinarily rely upon a driver who has exclusive control of a vehicle. *Id.* at 421–22. However, a guest in an automobile is required to exercise ordinary care for his own safety. *Id.* at 421. When dangers, which are either reasonably manifest or known to an invited guest, confront the driver of a vehicle, and the guest has an adequate and proper opportunity to control or influence the situation for safety, if he sits by without warning or protest and permits himself to be driven carelessly to his injury, he is negligent. *Id.*

■ The evidence shows that Hagedorn did not avail himself of the opportunity to get off the motorcycle when it stopped in a driveway and a yard at the time the officer was in initial pursuit. Furthermore, there was no indication of any warning or protest by Hagedorn in regard to Cary's visible and obvious lack of caution and erratic driving.

There was sufficient evidence for the submission of Instruction No. 10. Hagedorn's second point is denied.

■ In his third point, Hagedorn argues that the trial court erred by overruling his objection and submitting Instruction No. 11.

Instruction No. 11 read as follows:

In your verdict, you must assess a percentage of fault to Plaintiff Randal Hagedorn if you believe:

First, at the time Plaintiff Randal Hagedorn remained on Defendant Cary's motorcycle, Defendant Cary was intoxicated to the extent that Defendant Cary's driving ability was impaired, and

Second, Plaintiff Hagedorn remained on Defendant Cary's motorcycle knowing that Defendant Cary was in such an intoxicated condition, and

Third, Plaintiff was thereby negligent, and

Fourth, such negligence and the impaired driving ability of the Defendant Cary directly caused or directly contributed to cause any damage Plaintiff Hagedorn may have sustained.

Hagedorn argues that there was insufficient evidence to show that he remained on Cary's motorcycle knowing that Cary was intoxicated to the extent that his driving ability was impaired.

There was evidence that Cary had consumed up to five beers on the day of the accident and that at the time of the accident he had a strong odor of alcohol on his breath. Cary's erratic driving and fleeing from the police are reflective that his judgment was impaired. From the facts, it is reasonable to infer that Hagedorn was aware that Cary had been drinking. Furthermore, Hagedorn had the opportunity to get off the motorcycle when it stopped in the driveway and again in the yard.

Taken in the light most favorable to the defendant the evidence supported the submission of Instruction No. 11. Hagedorn's third point is denied.

In his fourth point, Hagedorn argues that the trial court erred in refusing to submit his tendered Instruction No. A. Hagedorn argues that there was sufficient evidence to support his submission that Officer Adams was following the motorcycle too closely and that Officer Adams operated his patrol car in violation of the City of Lee's Summit Police Department's policy in regard to high speed chases.

Tendered Instruction No. A read as follows:

In your verdict you must assess a percentage of fault to defendant City of Lee's Summit, Missouri if you believe:

First, either:

Officer Adams drove at an excessive speed, or

Officer Adams was following the Honda Motorcycle too closely, or

Officer Adams failed to keep a careful look out, or

Officer Adams knew or would have known that there was a reasonable likelihood of collision in time thereafter to have swerved but Officer Adams failed to do so, or

Officer Adams operated his automobile in violation of established police department policy set by the City of Lee's Summit Police Department in connection with high speed vehicular chases, and

Second, Officer Adams, in any one or more of the respects submitted in paragraph First, was thereby negligent, and

Third, such negligence directly caused damage to plaintiff or directly contributed to cause damage to plaintiff.

When an instruction presents theories in the disjunctive, each must be supported by substantial evidence and there is no error in refusing an instruction where there is no evidence to support each and every element of the instruction. *Rowe v. Norfolk & Western Ry. Co.*, 787 S.W.2d 751, 756 (Mo. App.1990).

Hagedorn fails to reference any evidence that shows the distance between the patrol car and the motorcycle. Moreover, the circumstances reflect a high speed chase with the motorcycle accelerating so rapidly that the patrol car had to reach speeds of 100 miles per hour in its initial effort to catch up with the motorcycle. The speed leveled off at approximately 80 miles per hour and then the motorcycle stopped over a hill and the patrol car collided with the motorcycle. These facts do not support a submission that Officer Adams was following the motorcycle too closely. Furthermore, the evidence reflects that under the Lee's Summit policy in regard to high speed chases dis-

cretion as to when and how to begin and end a high speed chase is left to the officer under the circumstances presented. The evidence did not support a submission that Officer Adams violated the Lee's Summit policy even if violation of the policy were to be considered sufficient of itself to establish negligence, a question that we need not address.

The trial court did not err by failing to submit Instruction No. A. Hagedorn's fourth point is denied.

■ In his fifth point, Hagedorn argues that the trial court erred in directing a verdict in favor of defendant, Lee's Summit Police Officer Garry Adams, at the close of all the evidence.

As a governmental officer, a police officer is "immune from liability for torts arising out of a discretionary act but he is subject to liability for negligently performing ministerial acts." *Oberkramer v. City of Ellisville*, 650 S.W.2d 286, 295 (Mo.App. 1983). The Missouri Supreme Court, in addressing the difference between ministerial and discretionary acts, stated as follows:

> Whether an act can be characterized as discretionary depends upon the degree of reason and judgment required. It has been said that a discretionary act requires "the exercise of reason in the adaption of means to an end and discretion in determining how or whether an act should be done or course pursued."
> . . .
> A ministerial function, in contrast, is one "of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed."

*Kanagawa v. State*, 685 S.W.2d 831, 836 (Mo. banc 1985) (quoting *Rustici v. Weidemeyer*, 673 S.W.2d 762, 769 (Mo. banc 1984)). In determining whether an act is discretionary, the court must give due regard to:

> society's compelling interest in vigorous and effective administration of public af-

fairs [which] requires that the law protect those individuals who, in the face of imperfect information and limited resources, must daily exercise their best judgment in conducting the public's business.... "If an officer is to be put in fear of financial loss at every exercise of his official functions, manifestly the interest of the public will inevitably suffer from the too complacent attitude thus engendered."

*Id.* at 836 (citations omitted). In determining whether a public official's acts are discretionary or ministerial, the court must weigh "such factors as the nature of the official's duties, the extent to which the acts involve policymaking or the exercise of professional expertise and judgment, and the likely consequences of withholding immunity." *Id.*

After considering the evidence presented in the case at bar, the trial court correctly held that Officer Adams' actions in pursuing defendant Cary were discretionary and protected by official immunity. In its pursuit policy, the City of Lee's Summit Police Department states: "There are three critical factors for the officer to consider in any pursuit. First is when to pursue, second is what to do during the actual pursuit, and lastly, when to abandon the pursuit." Each of these matters is fraught with discretion; it is impossible for the City to dictate detailed, specific procedures that the officers must follow when faced with a pursuit of the nature presented in the case at bar.

Officer Adams was protected by official immunity and the trial court did not err by directing a verdict in his favor. Hagedorn's fifth point is denied.

In his sixth point, Hagedorn argues that the trial court erred in failing to sustain his objection to defense counsel questioning him in regard to Medicaid services and payments available to him. Hagedorn argues that these questions violated the collateral source rule and improperly introduced the question of insurance in the case.

■ Under the collateral source rule, a wrongdoer is not entitled to have

the damages for which he is liable reduced by proving that the plaintiff has received or will receive compensation from a collateral source. *Collier v. Roth,* 434 S.W.2d 502, 506–07 (Mo.1968). However, the fact that evidence is inadmissible in mitigation of damages does not require its exclusion if it is relevant and material for other purposes, such as impeachment. *Stanziale v. Musick,* 370 S.W.2d 261, 268 (Mo.1963). Additionally, the injection into a case that a litigant is covered by a policy of insurance is error unless the issues in the case make the fact of insurance relevant. *McCaffery v. St. Louis Pub. Serv. Co.,* 363 Mo. 545, 252 S.W.2d 361, 367 (1952).

In the case at bar, Hagedorn testified on cross-examination that the reason he did not follow his doctor's orders and receive physical therapy was because he could not afford physical therapy. To refute this testimony defense counsel then brought out that Hagedorn was entitled to Medicaid benefits and that there was in fact no financial limitation on his health care benefits.

The existence of Medicaid benefits was relevant and material to impeach Hagedorn's testimony that he could not afford physical therapy. The evidence was relevant toward Hagedorn's credibility, to show that Hagedorn chose not to avail himself of physical therapy, and to counter any sympathy that might otherwise be generated by his lack of ability to afford physical therapy.

Hagedorn's sixth point is denied.

In his seventh point, Hagedorn argues that the trial court erred in denying his motion for new trial because the verdict was inadequate in light of the stipulated damages.

The jury awarded Hagedorn damages in the amount of $20,000. Hagedorn argues that this amount is inadequate in light of the fact that the parties stipulated that his medical expenses were $34,224.40.

Recovery for medical expenses incurred as a result of a defendant's negligence in a personal injury action depends upon proof of the necessity and reasonableness of the medical expenses incurred. *Schaeffer v. Craden,* 800 S.W.2d 165, 166 (Mo.App.1990). However, a valid stipulation dispenses with the necessity of proof of matters stipulated and the party who stipulates waives his right to advance subsequent contentions contrary to stipulated facts. *McDonald v. City of Lake Lotawana,* 721 S.W.2d 200, 202 (Mo.App.1986).

In the case at bar, counsel stipulated that Hagedorn had incurred reasonable and necessary medical expenses in the amount of $34,224.40. Now, on appeal, respondents argue that alternative treatment was available and that the expenses were not justified because Hagedorn lacked diligence in complying with the treatment ordered. In other words, respondents argue that the medical expenses were not reasonable and necessary, an argument that respondents waived by their stipulation at trial. The award of $20,000 is against the weight of the evidence and the trial court is directed to amend the judgment to award Hagedorn damages in the amount of $34,224.40.

In his eighth point, Hagedorn argues that the trial court erred in denying his motion for new trial because the verdict was so inadequate as to show bias and prejudice.

In order for a plaintiff to receive a new trial based on the amount of the jury's verdict, he must show two things: First, he must present evidence of some error or occurrence at trial sufficient to incite prejudice; second, he must demonstrate that the evidence, when viewed in the light most favorable to the verdict, does not warrant such a verdict. *Smith v. Archbishop of St. Louis,* 632 S.W.2d 516, 524 (Mo.App.1982). The size of the verdict does not in and of itself establish that it resulted from bias or passion and prejudice. *Stegan v. H.W. Freeman Constr. Co.,* 637 S.W.2d 794, 799 (Mo.App.1982).

On appeal, Hagedorn offers no evidence or argument of either element and we find none.

Hagedorn's eighth point is denied.

In his ninth point, Hagedorn argues that the trial court erred in submitting, over his objection, Instruction No. 5. Hagedorn argues that Instruction No. 5 failed to use the phrase "highest degree of care" in the definition of "negligent" or "negligence" and failed to give a definition for the phrase "highest degree of care."

Instruction No. 5 read as follows:

The term "negligent" or "negligence" as applied to the driver of a motor vehicle means failure to use that degree of care that a very careful and prudent person would use under the same or similar circumstances. The term "negligent" or "negligence" as applied to a passenger on a motorcycle means the failure to use that degree of care that an ordinarily careful and prudent person would use under the same or similar circumstances.

Where an approved jury instruction applies, it must be given. *Nickerson v. Moberly Foods, Inc.*, 781 S.W.2d 87, 92 (Mo. App.1989). Instruction No. 5 was in accordance with MAI 11.08 [1978 New]. The instruction defines negligence in terms of the highest degree of care as "failure to use that degree of care that a very careful and prudent person would use under the same or similar circumstances." MAI 11.08 was the applicable definitional instruction for negligence in the case at bar.

Hagedorn's argument of error in the submission of Instruction No. 5 is without merit.

In his final point, Hagedorn argues that the trial court erred in failing to sustain his objection to certain remarks made during closing argument. Hagedorn complains specifically that the trial court erred in permitting counsel for respondents to remark in closing argument, over his objections, that if Cary and Hagedorn had gotten away from the police officer they would have been at Lafferty's Lounge telling stories of how they beat the cop car. Hagedorn asserts that this remark goes beyond the issues and urged prejudicial matters.

The regulation of closing argument rests largely within the sound discretion of the trial court and its rulings will not be disturbed on appeal absent a clear showing of abuse of discretion. *St. Louis Southwestern Ry. Co. v. Federal Compress and Warehouse Co.*, 803 S.W.2d 40, 45 (Mo.App.1990). The permissible field of argument is broad and as long as counsel does not go beyond the evidence and issues drawn by the instructions or urge prejudicial matters or claim or defense which the evidence and issues do not justify, counsel is permitted wide latitude in his comments. *Titsworth v. Powell*, 776 S.W.2d 416, 422 (Mo.App.1989).

The remarks about Lafferty's Lounge were supported by the evidence in the case at bar. Hagedorn testified that his vehicle was parked at Lafferty's Lounge. He further testified that his purpose in going to Lafferty's was to meet a friend and pick up his car. It was therefore logical and permissible to argue that Hagedorn's ultimate destination was Lafferty's Lounge. It is further logical to assume that Hagedorn would have commented to the friend he was meeting about being the subject of a police pursuit moments before he arrived.

The trial court did not err by overruling Hagedorn's objection to closing argument.

### CROSS–APPEAL OF CITY OF LEE'S SUMMIT AND MICHAEL CARY

The City of Lee's Summit and Michael Cary have filed a cross-appeal relating to the $20,000 payment that Hagedorn received from his insurance carrier, American Standard, for uninsured motorist coverage.

In their first point, cross-appellants argue that the trial court erred in failing to sustain their Motions for Credit of the payment received by Hagedorn from his uninsured motorist carrier. Cross-appellants argue that the payment was on behalf of one liable in tort pursuant to section 537.-060, RSMo 1986, and further that said credit should be allowed in keeping with the legislative intent of section 379.203, RSMo Supp.1992, the mandatory uninsured mo-

torist coverage statute.[1]

Section 537.060 involves the right of contribution between tortfeasors. The statute provides that when an agreement by release is given to one liable in tort for the same injury then such agreement should reduce the claim by the stipulated amount. However, section 537.060 does not require that any settlement payments a plaintiff receives should, whether in contract or tort, be credited against his judgment. The statute is only applicable as between tortfeasors and does not address a liability under contract only.

Under the collateral source rule, as discussed previously herein, a wrongdoer is not entitled to have damages for which he is liable reduced by proving that plaintiff has received or will receive compensation or indemnity for the loss from a collateral source. *Collier v. Roth,* 434 S.W.2d at 506–07. The collateral source rule is applicable to uninsured motorist payments made under a policy of insurance by the insured's own insurance company to the insured for which the insured has paid a premium. *Kaelin v. Nuelle,* 537 S.W.2d 226, 237 (Mo.App.1976).

Cross-appellants' further argument that section 379.203 somehow alters the collateral source rule is to no avail. Section 379.203.1 merely requires uninsured motorist coverage under automobile liability policies "delivered or issued for delivery" in Missouri. This does not alter the fact that the uninsured motorist coverage is provided to the insured under the insured's contract of insurance for which the insured must pay premiums and that payment of the uninsured motorist coverage is from a source collateral of the wrongdoer.[2]

Cross-appellants' first point is denied.

In their second point, cross-appellants argue that the trial court erred in reallocating the portion of the judgment attributable to Michael Cary between Cary and City of Lee's Summit and Hagedorn.

Hagedorn's judgment of $20,000 was reallocated by the trial court pursuant to section 537.067, RSMo Supp.1992. The trial court determined that the obligation against Michael Cary, the uninsured defendant, was uncollectible and ordered reallocation of the percentage of the damages assessed against Cary.

Cross-appellants argue that the reallocation was improper because the obligation as to Cary was not uncollectible since Hagedorn had mandatory uninsured motorist coverage which cross-appellants argue Hagedorn received in satisfaction of his judgment against Cary.

Once again, cross-appellants' argument ignores the collateral source rule and the fact that the uninsured motorist coverage was received pursuant to Hagedorn's insurance contract and not from or on behalf of defendant Cary.

Cross-appellants' second point is denied.

The trial court is directed to amend the judgment herein to the amount of $34,224.40 in accordance with this opinion. In all other respects, the judgment of the trial court is affirmed.

All concur.

---

1. All references to section 537.060 are to RSMo 1986 and all references to section 379.203 are to RSMo Supp.1992.

2. The right of the injured party to recover from an uninsured motorist carrier arises from the insurance contract rather than in tort. *Automobile Club Inter–Ins. Exchange v. Farmers Ins. Co.,* 646 S.W.2d 838, 840 (Mo.App.1982).