Charles INCE, Linna Ince, Nate Ince and Matt Ince, Respondents,

v.

MONEY'S BUILDING & DEVELOPMENT, INC., Appellant.

No. ED 82899.

Missouri Court of Appeals, Eastern District, Division One.

April 6, 2004.

Rehearing Denied May 26, 2004.

Dana Hockensmith, Paul C. Hamill, St. Louis, MO, for appellant.

Gregory J. Pals, Kansas City, MO, for respondent.

GARY M. GAERTNER, SR., Presiding Judge.

Appellant, Money's Building & Development, Inc. ("defendant"), appeals from the judgment of the Circuit Court of Jefferson County following a jury trial awarding respondents, Charles, Linna, Nate, and Matt Ince ("plaintiffs"), $420,000 in compensation for property damages based on a breach of contract action. We affirm, conditioned on remittitur.

Plaintiffs and defendant entered into two written agreements regarding the construction of plaintiffs' home. The first agreement consisted of a letter agreement signed by plaintiffs and defendant dated May 8, 1996. The letter agreement provided that defendant would act as the general contractor and that defendant would "see that the house is built in a 'workmanlike' manner and according to all specifica-

tions and codes." The second agreement consisted of an escrow agreement signed by plaintiffs, defendant, and Jefferson Savings and Loan Association .dated "May, 1996." The escrow agreement provided "[c]ompletion of the building to be done by the owners."

After plaintiffs and defendant entered into these two agreements, construction on the house began. In June 1996, plaintiffs noticed that the trusses[1] did not appear to be installed properly. A dispute arose between plaintiffs and defendant as to how the problem with the trusses should be resolved. Ultimately, defendant refused to replace the roof and plaintiffs hired a different contractor to do the work.

After the house was completed, plaintiffs moved in and noticed that mold was growing in many areas of the house. Plaintiffs then filed suit against defendant alleging, *inter alia*, that defendant breached the contract that it entered into with plaintiffs.

Defendant argues that the problems with the construction of plaintiffs' home arose because of discrepancies between the two agreements as to whether defendant or plaintiffs would be responsible for completing the construction of the home.

The jury returned a verdict for plaintiffs for breach of contract and negligence, and awarded plaintiff $420,000 in damages for breach of contract, which is the only part of the verdict at issue on appeal. The trial court denied defendant's motion for a new trial for breach of contract.

■ In its first point on appeal, defendant asserts that the trial court erred in entering judgment on the jury's verdict of $420,000 for breach of contract because the amount of the verdict was not supported by the evidence. Defendant argues that the proper remedy for this error is a new

trial, but in the alternative, this Court should order remittitur and reduce the jury's verdict to $180,263.07, the maximum amount of damages supported by the evidence.

■ The assessment of damages is primarily the function of the jury. *Koehler v. Burlington Northern, Inc.,* 573 S.W.2d 938, 946 (Mo.App.1978). Therefore, we will exercise our power to interfere with and reduce a verdict with caution. *Id.* Further, we will not disturb a trial court's entry of judgment on a jury verdict unless there is an abuse of discretion either by the trial court or by the jury. *Graham v. County Medical Equipment Co. Inc.,* 24 S.W.3d 145, 148 (Mo. App. E.D.2000).

■ A jury has the duty to award a sum that will reasonably compensate plaintiff. *Hart v. City of Butler,* 393 S.W.2d 568, 580 (Mo.1965). A jury's verdict for an amount not supported by the evidence can be either grossly excessive or merely excessive. *See Worley v. Tucker Nevils, Inc.,* 503 S.W.2d 417, 423 (Mo.banc.1973). A grossly excessive verdict indicates bias and prejudice on the part of the jury, and requires a new trial to be ordered. *Id.* In contrast, a merely excessive verdict occurs when a jury made an honest mistake in weighing the evidence as to the nature and extent of the injury, in fixing the damages, and in subsequently awarding a disproportionate amount of money. *Id.* Such a mistake can be corrected without a new trial by requiring a remittitur of a portion of the amount awarded. *Id.*

■ An appellate court has the authority to order a remittitur, or a reduction of an excessive verdict, as a condition of affirmance if a jury's verdict exceeds the upper limit of a fair and reasonable compensation for a plaintiff's injuries and

1. The trusses make up the wood framework used to support the roof.

damages. *Id.* at 423–24. Section 537.068, RSMo 2000. One of the purposes of the doctrine of remittitur is to promote judicial economy by avoiding the delay and additional expense of a new trial. *Bishop v. Cummines,* 870 S.W.2d 922, 924 (Mo.App. W.D.1994). Thus, when the amount of damages is the sole error by the jury, an appellate court should not hesitate to give the plaintiff the option to take his or her judgment for the proper sum, and thus end the litigation. *Id.* at 924, n. 2.

 When reviewing whether a verdict is excessive, we view the evidence in the light most favorable to the verdict disregarding all unfavorable evidence to the contrary. *Koehler,* 573 S.W.2d at 945. Each case must be considered on its own facts with the ultimate test being what fairly and reasonably compensates plaintiff for the damages sustained. *Hatch v. V.P. Fair Foundation, Inc.,* 990 S.W.2d 126, 141 (Mo.App. E.D.1999).

 MAI 4.01 is the proper damage instruction in actions involving breach of construction contracts. *McDowell v. Schuette,* 610 S.W.2d 29, 39 (Mo.App. E.D. 1980). For a breach of contract action, there are two methods commonly used to measure the resulting damages. *Hensic v. Afshari Enterprises, Inc.,* 599 S.W.2d 522, 524 (Mo.App. E.D.1980). The first method, "cost of repair," calculates the cost of repairing the defective work. *Id.* The second method, "diminution in value," is the difference between the value of the property with the defective work and what its value would have been if it had been constructed according to the terms of the contract. *See id.*

In this case, instruction number eleven, equivalent to MAI 4.01, was the damage instruction given to the jury. This is the proper damage instruction in a case such as this, which involves a breach of con-

struction contract. *McDowell,* 610 S.W.2d at 39.

First, plaintiffs offered evidence as to the cost of repairs to the roof. Plaintiffs offered into evidence Exhibit 26, a document created by plaintiffs calculating their expenses for the items they had to replace due to the roof damage. Mr. Ince testified on direct examination as to the contents of Exhibit 26, which included plaintiffs' expenses for: removing and replacing the plumbing stacks; towing the truss truck to the job site; an engineer's report; wiring costs; utility costs; material costs for replacement of siding, soffit, and fascia; drywall; an additional contract to remove and replace the roof; extra lumber; the kitchen arches; the garage header; fixing the steel beams; roof deck framing lumber; shingles; framing lumber; roof felt; disbursing fee to construction escrow; six months rent; a storage locker for furniture; and mortgage insurance. The evidence shows that the total value of these repairs listed in Exhibit 26 was: $33,380.07.

Then, plaintiffs introduced evidence as to the diminution in value of their home. The diminution in value of their home was due to the mold problems revealed to plaintiffs after 1998, and was in addition to the cost of repairs to the roof. John Hottle, a real estate appraiser, testified that the decrease in value of plaintiffs home was $140,000. Mr. Ince testified that the decrease in value of his home was $150,000.

Further, appellant argues in its brief that

"the total amount of damages recoverable under the breach of contract count, and the maximum award supported by the evidence, if the jury believed all of plaintiffs' evidence, would be the diminution in value of $150,000.00 plus the con-

sequential damages of $30,263.07 for a total award of $180,263.07." [2]

We agree. The plaintiffs' damages constitute the costs to repair the roof and the diminution in value of plaintiffs' home after 1998 because of the mold problems.

According to the evidence, the total cost of repairs that plaintiffs incurred was $33,380.07. The maximum diminution value, in considering the evidence in the light most favorable to the verdict, was $150,000. Therefore, the maximum amount of damages supported by the evidence was $183,380.07. The jury's verdict of $420,000 for breach of contract exceeds the upper limit of a fair and reasonable compensation for damages sustained by plaintiffs. Therefore, we affirm on condition of remittitur.

 In its second point on appeal, defendant argues the trial court erred in failing to give Instruction G, which defendant requested, because the jury was not given any guidance in interpreting the contradictory terms in the two separate agreements.

 Our review of a trial court's refusal to submit an instruction is for abuse of discretion. *First State Bank of St. Charles v. Frankel*, 86 S.W.3d 161, 173 (Mo.App. E.D.2002). An instruction must be supported by evidence, which, if true, is probative of the issues from which the jury can decide the case. *Id.* In considering a party's challenge to the trial court's refusal to give a jury instruction, we view the evidence and the reasonable inferences therefrom in the light most favorable to the submission of the instruction and we disregard any contrary evidence. *Id.* We will only reverse the trial court if the refusal to submit the instruction resulted in prejudice. *Id.*

Instruction G provided:

In determining whether or not the defendant agreed to the term of the contract set forth in paragraph first of Instruction No. ——, you should consider the following factors:

Exhibit 1, the agreement between the parties; and

Exhibit 2, the Construction Escrow and Disbursing Agreement with Hillsboro Title Co.; and

The actions of the parties in constructing plaintiff's house.

The agreement in Exhibit 1 states, "[defendant] agrees to act as General Contractor for [plaintiffs] on the project known as Lot 20 Hidden Meadows; to see that the house is built in a 'workmanlike' manner and according to all specifications and codes." The agreement in Exhibit 2 states, "[c]ompletion of the building to be done by [plaintiffs].

 A proper instruction does not submit evidentiary details, but rather only ultimate facts thereby avoiding undue emphasis of certain evidence, confusion, or the possibility of favoring one party over another. *Duren v. Union Pacific R. Co.*, 980 S.W.2d 77, 79 (Mo.App. E.D.1998). A non-Missouri Approved Instruction "must be simple, brief, impartial, free from argument, and not submit to the jury or require findings of detailed evidentiary facts." *Frankel*, 86 S.W.3d at 173.

 Where a contract is ambiguous, we look to external matters to determine the true intent of the parties. *State Farm Mut. Auto. Ins. Co. v. Esswein*, 43 S.W.3d 833, 842 (Mo.App. E.D.2000). Fac-

**2.** This Court's review of the evidence totals $33,380.07 in cost of repair damages, a figure different than appellant's.

tors that are appropriate for consideration include: subsidiary agreements, the relationship between the parties, the subject matter of the contract, the facts and circumstances surrounding the execution of the contract, the practical construction the parties themselves have placed on the contract by their actions, and other external circumstances that reflect the intent of the parties. *Id.* quoting *Butler v. Mitchell–Hugeback, Inc.,* 895 S.W.2d 15, 21 (Mo. banc 1995).

In this case, the contract between the parties is not ambiguous. It clearly states that defendant is responsible for ensuring that the house is built according to all specifications and codes. As a result, we need look no further than the four corners of this contract. *Corbett v. Gerstein,* 95 S.W.3d 118, 120 (Mo.App. E.D.2002).

However, assuming *arguendo* that the contract was ambiguous, the instruction would still not be proper because it inexplicably limited the jury's consideration to three factors, *i.e.,* the contract between the parties, the escrow agreement, and the actions of the parties. The instruction precludes consideration of, *inter alia,* the relationship of the parties, the facts and circumstances surrounding the execution of the contract, and any other external circumstances that might cast light on the intent of the parties. In short, the instruction unfairly emphasizes a few factors and excludes other relevant factors. Therefore, the instruction, which referenced other factors, was not proper, and the trial court did not abuse its discretion in declining to give the instruction. Point denied.

▆▆▆ Lastly, an appellate court may not compel remittitur, but may only order a party plaintiff to remit or experience the burden and expense of a new trial. *Letz v. Turbomeca Engine Corp.,* 975 S.W.2d 155, 180 (Mo.App. W.D.1997). In other words, a plaintiff has the option of agreeing to the remittitur or facing a new trial. *Bishop,* 870 S.W.2d at 924.

Therefore, if the plaintiffs enter a remittitur of $236,619.93 within fifteen days after the filing of this court's mandate, that judgment will stand affirmed for $183,380.07, representing $33,380.07 in cost of repair damages and $150,000 in diminution value damages. If plaintiffs do not enter a remittitur, then the original judgment of $420,000 is reversed, and the case will be remanded for a new trial.

ROBERT G. DOWD, JR., J. and MARY R. RUSSELL, J., concur.