**Kendra LYNN, Appellant–Respondent,**

v.

**TNT LOGISTICS NORTH AMERICA INC., et al., Respondent–Appellant.**

**Nos. WD 68096, WD 68135.**

Missouri Court of Appeals, Western District.

Nov. 7, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 23, 2008.

Application for Transfer Denied Feb. 24, 2009.

Edward D. Robertson, Jr., Mary D. Winter, Anthony L. Dewitt, Jefferson City, MO, Kirk D. Holman, Mark A. Buchanan, Kansas City, MO, for appellant-respondent.

Michael F. Delaney, Overland Park, KS, Eric P. Kelly, Kansas City, MO, Gerald P. Greiman, St. Louis, MO, for respondent-appellant.

Before Div II: HOLLIGER, P.J., LOWENSTEIN and NEWTON, JJ.

HAROLD L. LOWENSTEIN, Judge.

This case for sexual harassment brought pursuant to the Missouri Human Rights Act, Section 213.010,[1] ("the MHRA") and tried by a jury, was brought by Kendra Lynn, an employee, against her employer, TNT Logistics North America, Inc. ("TNT").[2] The jury returned an eleven-to-one verdict for Lynn on her claim for sexual harassment and awarded compensatory damages of $50,000. In a bifurcated procedure, the jury also returned a verdict authorizing an award of punitive damages. The jury heard evidence to determine the amount of punitive damages and voted ten-to-two to award Lynn $6.75 million in punitive damages.

---

1. All statutory references are to RSMo (2000) unless otherwise specified.

2. The underlying suit involved a second count for retaliatory discharge on which the jury returned a defendant's verdict on a vote of ten to two. Lynn does not appeal the judgment entered on the second count.

The trial court entered judgment on the compensatory award and, on TNT's motion, remitted damages to $450,000. The court awarded prejudgment interest on both the actual and remitted punitive damages. Lynn appealed the court ordered remittitur, asserting the trial court erred in remitting the damages without offering her the alternative of a new trial.

TNT cross-appealed, raising three issues. TNT first claims that the trial court should have sustained its motion for judgment on the underlying claim and the punitive damages claim as Lynn failed to make a submissible case for sexual harassment and punitive damages were not warranted. TNT next claims that the remitted punitive damages award was grossly excessive and should have been reduced further to $250,000. TNT next alleges that the award of prejudgment interest was improper or, at most, should have only been awarded on one half of the punitive damages amount. For ease of understanding, some of these claims are consolidated and are addressed out of the order in which they were presented.

## I. Factual Background

Until she was terminated in January of 2004, Lynn had worked for sixteen months as an assembly line scanner for TNT at its Kansas City automobile parts warehouse. In August 2003, Michael Gill was hired as a supervisor for Lynn's shift. Starting in October 2003, Gill made a number of comments to Lynn. When passing out paychecks, Gill told Lynn she was not going to get paid "until you bounce your ass." While passing her workstation, Gill told Lynn she had a "phat [3] ass and big titties." On another occasion, he described, in graphic detail, his plans for performing oral sodomy on her. He told her that his "dick was bigger" than that of another

supervisor, and once she "had white" she would never go back to black. Another supervisor witnessed Gill "dancing provocatively" behind Lynn while she worked at her station, and he reported Gill's actions to a superior.

In late October 2003, in front of another supervisor, Gill hit Lynn on the buttocks with a belt and told her to "get your fat ass out of here." The supervisor who witnessed the incident reported it to his immediate superior, who later denied he was given the information.

Lynn complained about Gill's behavior to another shift supervisor. Her complaints were forwarded to the manager of the facility. No action was taken. To avoid Gill, Lynn subsequently transferred to another shift.

Lynn filed her state charge of discrimination under the MHRA in late October 2003. The complaint was forwarded to TNT in November 2003. After a five day trial, the jury returned a verdict for Lynn on the sexual harassment claim and for TNT on Lynn's wrongful termination claim.

## II. ISSUES AND DISCUSSION

### A. Sexual Harassment Claim

#### 1. Did Lynn make a submissible claim for sexual harassment?

 In determining whether the plaintiff has made a submissible claim for sexual harassment, this court reviews the evidence in a light most favorable to the plaintiff and gives the plaintiff " 'the benefit of every reasonable inference which the evidence tends to support, disregarding all contrary evidence.' " *Wright v. Over–the–Road & City Transfer Drivers, Helpers, Dockmen, & Warehousemen*, 945 S.W.2d

---

**3.** Phat is evidently a present-day acronym for "pretty hot and tempting."

481, 498 (Mo.App.1997) (quoting *Blake v. Irwin,* 913 S.W.2d 923, 928 (Mo.App. 1996)). " 'Under this standard, a jury verdict will not be overturned unless there is a complete absence of probative facts to support the verdict.' " *Id.* (quoting *Blake,* 913 S.W.2d at 928). "A case should not be withdrawn from the jury unless the facts in evidence and the inferences fairly deductible therefrom are so strongly against plaintiffs as to leave no room for reasonable minds to differ." *Bridgeforth v. Proffitt,* 490 S.W.2d 416, 423 (Mo.App.1973).

▮ To establish her claim of sexual harassment, the Lynn was tasked with establishing that: (1) she was a member of a protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based on her sex; (4) this harassment affected a term, condition, or privilege of employment in a manner sufficiently severe to create an abusive work environment and (5) TNT knew or should have known of the harassment and failed to take proper remedial action. *Howard v. Burns Bros.,* 149 F.3d 835, 840 (8th Cir.1998). TNT proffered a converse instruction that highlighted Lynn's burden to show that Gill's unwelcome conduct and comments constituted sexual harassment sufficiently severe to create a work environment that a reasonable person in Lynn's position would find to be hostile, intimidating, or offensive; her sex was a contributing factor in those comments or conduct; and as a result of the conduct, Lynn sustained damages. Once evidence of "improper conduct and subjective offense" is introduced, it is largely up to the jury to determine if the conduct rose to the level of being abusive. *Cooper v. Albacore Holdings, Inc.,* 204 S.W.3d 238, 245 (Mo.App.2006).

▮ "Sexual harassment creates a hostile work environment when sexual conduct either creates an intimidating, hostile, or offensive work environment or has the purpose or effect of unreasonably interfering with an individual's work performance." *Barekman v. City of Republic,* 232 S.W.3d 675, 679 (Mo.App.2007) (*citing Mason v. Wal–Mart Stores, Inc.,* 91 S.W.3d 738, 742 (Mo.App.2002)). The plaintiff establishes a primary element of a cause for sexual harassment where she can show that the employer *knew,* or should have known, *of the harassment* and *failed to take appropriate action. Howard,* 149 F.3d at 840.

TNT claims that the jury's verdict should be "reversed outright" because Missouri law and federal anti-discrimination statutes are "not designed to purge the workplace of vulgarity" or "punish for boorish or even vulgar workplace conduct." TNT concludes by stating that this action for sexual harassment presents the kind of claim that should be "filtered out of the court system."

TNT's argument misses the mark. The conduct established in the five reported incidents goes beyond the harmless comments or boorish conduct of a supervisor directed at a female employee. TNT seems to disregard its own egregious behavior in ignoring the conduct and doing absolutely nothing to curb or punish the conduct of its supervisor, even though the company had immediate knowledge of the conduct, which was reported to supervisors and pushed up the chain of command. *See Williams v. Mo. Dep't of Mental Health,* 407 F.3d 972, 975–76 (8th Cir.2005).

The evidence here was sufficient to submit the case to the jury. Lynn established a submissible claim for sexual harassment pursuant to the MHRA. TNT's first point is denied.

### B. Punitive Damages

*1. Did Lynn make a submissible claim for punitive damages?*

▮ This court reviews the question of whether there is sufficient evidence to

support an award of punitive damages *de novo* as a question of law. *Drury v. Mo. Youth Soccer Ass'n,* 259 S.W.3d 558, 573 (Mo.App. E.D.2008). The evidence and all reasonable inferences are viewed in a light most favorable to submissibility and all evidence and inferences adverse thereto are disregarded. *Id.* "A submissible case is made if the evidence and the inferences drawn therefrom are sufficient to permit a reasonable juror to conclude that the plaintiff established with convincing clarity that the defendant's conduct was outrageous because of evil motive or reckless indifference." *Id.*

Lynn presented sufficient evidence to establish the submissibility of her punitive damages claim. The testimony of five plaintiff's witnesses, all TNT personnel, provided substantial support for Lynn's claim. Gill, John Stalder, and Lawrence Richards were all shift supervisors at the TNT facility. They reported to David Dreis, the operations manager at the TNT facility. Dreis reported to Craig Stevens, the TNT contract manager.

Gill was Lynn's shift supervisor. Richards told Gill on October 21, 2003, that Lynn had complained to him of sexual harassment by Gill. Gill denied the incidents and stated that the first he knew of the "belt to the buttocks" claim was after an EEOC complaint, filed by Lynn, was sent to the company in November 2003. Gill was told to prepare a statement regarding the incidents and save it to a diskette. Gill testified that he left the diskette with Stevens because Stevens was busy when Gill brought the diskette by in the middle of a shift. Gill stated that Stephens called him several days later and asked if everything in the report was true and told Gill that he would "take care of it from here." Other than being asked to prepare a statement, Gill was never interviewed or reprimanded for his conduct.

John Stalder was another TNT shift supervisor. He stated that Lynn was an above average employee. Stalder witnessed the belt-swatting and knew that it constituted sexual harassment. Stalder testified that Gill told Lynn to "get her butt or get her ass out of here or something like that." He reported the incident to his superior, Dreis, who told him that "he would look into it" and that "it would go away." Stalder and Richards spoke of Gill dancing provocatively around Lynn. He testified that TNT was a global operation and that he had been with them since March 2003. He stated that he knew of no human resources personnel in Kansas City, where TNT had four facilities, until after Lynn made her claims.

Lawrence Richards was another of Lynn's supervisors. He stated that she was close to being "one of the top employees." After Lynn made her MHRA complaint, Richards sent a memo to Dreis and Stevens reporting Gill's comments about Lynn's breasts and buttocks and the belt-swatting incident. He testified that he did nothing further, although he knew that company policy dictated that he take further action.

David Dreis had been the TNT facility operations manager since 2003. He had the responsibility of enforcing equal opportunity practices for TNT, although he testified that he had not received any sexual harassment training. On October 21, 2003, he received a report from Richards that Lynn was being harassed by Gill. He testified that he mistakenly believed that the contract between the company and the union controlled claims such as that of Lynn, and, relying on that belief, he "would not do anything until Kendra approached me." Dreis never spoke to Gill or Lynn regarding Lynn's complaints. He stated that he never knew of the belt-smacking incident and admitted that "the

company took no steps whatsoever to investigate the Lynn claim."

Craig Stevens, Dreis's superior, was the contract manager for TNT's four Kansas City facilities from 1999 until December 2004, when he was terminated "after giving a deposition regarding this case." When Lynn filed her complaint, Stevens turned her file over to TNT's corporate attorney in Florida. After Lynn was terminated in January 2004, Stevens was ordered to take statements from the persons involved in her claim. He testified that those reports were backdated to November 2003. Stevens was subsequently ordered to conduct "some training" on "sexual harassment matters."

Suffice to say, the evidence demonstrates that, although TNT had policies and procedures in place for handling sexual harassment claims, in the case at bar, the policies and procedures were disregarded by TNT personnel and TNT made no effort to enforce them. Although Lynn made several complaints to management, Dreis testified that the company failed to follow any of TNT's guidelines with regard to the investigation of Lynn's complaints. The only action the company took, after her last complaint, was to permit her to change to the third shift, a shift that started at two o'clock in the morning, to avoid Gill.

The evidence, taken in a light most favorable to the punitive damages submission, was that Gill's conduct in the workplace was forbidden by the Missouri and federal law. The company provided no training for sexual harassment, or even human resources personnel, at a plant employing 175 employees, or, indeed, at any of its other Kansas City facilities, until after Lynn's termination in January 2004. The employer had direct knowledge of the sexual harassment but ignored the egregious conduct of one of its supervisors.

Such behavior constitutes reckless indifference. *Drury*, 259 S.W.3d at 573. Punitive damages were properly submitted.

## 2. Was the court's reduction of the punitive damages award based on statutory remittitur or a violation of constitutional due process?

The pivotal issue in this appeal concerns the trial court's reduction of the jury's punitive damages award of $6.75 million. Lynn requested punitive damages in an amount between $5 million and $10 million to send the company a message. In a post-trial motion, TNT argued for a reduction based on two grounds. They asked for statutory remittitur pursuant to Sections 510.263.6 and 537.068. TNT also argued for a reduction based on due process constitutional grounds as elucidated in *State Farm Mutual Insurance Co. v. Campbell*, 538 U.S. 408, 419–20, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003), arguing that *Campbell* stood for the proposition that "few awards exceeding a single digit ratio between punitive and compensatory damages . . . will satisfy due process."

In its judgment, the trial court specifically noted that the punitive amount was not the result of jury misconduct or error but, rather, "was excessive under the evidence." Without further explanation, the trial court reduced punitive damages to $450,000, evidently employing a punitive-to-compensatory damages ratio of nine to one. The court stated that "[d]amages in a claim for sexual harassment are often more subtle and difficult to quantify, than, for instance, a personal injury or product liability case." The court concluded that "a relatively small, arbitrary [multiplier] may not adequately punish wrongful conduct or deter its repetition."

This court is left with no clear reason for the reduction; was the award simply too generous under the evidence or did the

trial court reduce the award based on the due process concerns of *Campbell?* This court notes that the judgment was entered on the ninetieth day following the verdict, leaving no time for the parties to obtain clarification. If the trial court's grant of remittitur was based on due process grounds, it would then be subject to review as to whether the punitive amount violated due process. If the remittitur was based on Missouri statutory authority, the plaintiff should have been given the option of accepting the remittitur or a new trial on the issue of punitive damages. *Jordan v. Robert Half Pers. Agencies of Kansas City, Inc.,* 615 S.W.2d 574, 581 (Mo.App. 1981).

This court finds the language used in the final judgment, that the amount of punitive damages was *excessive under the evidence,* is dispositive and that the trial court granted remittitur pursuant to Missouri statutory authority. That portion of the judgment granting remittitur must be reversed as Lynn was not afforded the choice of a new trial. This conclusion, however, does not necessarily end the inquiry as to the amount of punitive damages.

### 3. Was the remitted amount of $450,000 an abuse of discretion?

An appellate court, like a trial court, may not compel remittitur; it may only order a party to remit or bear the burden and expense of a new trial. *Milam v. Vestal,* 671 S.W.2d 448, 453 (Mo. App.1984). Although great deference is given the jury's verdict amount, this court, after examination of the evidence, concludes, as did the trial court, that the award of $6.75 million was excessive.

Punitive damages are intended to punish outrageous conduct and deter a future occurrence of similar conduct. *Van Eaton v. Thon,* 764 S.W.2d 674, 677 (Mo.App.1988).

This court feels that $450,000 was too low to attain the purposes of punitive damages, as is the $250,000 proposed by TNT in its cross-appeal, and, accordingly, rejects both those amounts. This court notes that the defendant here did nothing to correct the actions of its supervisor that created a workplace that was hostile and rife with sexual harassment. TNT did nothing to alleviate or correct the situation created by its supervisor's conduct, even when its own people reported the comments and conduct in graphic detail. Rather, the company chose to ignore, hide, and then trivialize the situation its indifference had created.

Even if viewed under the constitutional criteria of *State Farm* and *Gore,* the facts peculiar to this case warrant punitive damages beyond a single digit ratio to compensatory damages. Gill was never interviewed or disciplined. The defendant deliberately backdated records in an effort to conceal its handling of Lynn's harassment. Gill's report to his supervisor, Stevens, was not reduced to a memorandum, but put on a diskette and hand-delivered to Stevens. The defendant did nothing until after this lawsuit was filed to correct its lack of any policy or personnel to deal with the law pertaining to sexual harassment claims—in fact, management at this plant believed any policy was governed by the union agreement. In sum, the plaintiff was exposed to continuing incidents of bad behavior, her complaints were never acknowledged, she had to transfer to a late night shift to avoid her harasser, and the company did nothing other than to close its eyes to the conduct of Gill, and then to minimize the events as being boorish and only lasting for a month.

The defendant company had four operations in Kansas City and over 100,000 employees nationwide. This court does not believe that the remittitur adopted by the trial court accomplishes the purposes of

punitive damages and does not take into account the reprehensible behavior of the wrongdoer. *See BMW of N. Am., Inc. v. Gore,* 517 U.S. 559, 575, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996).

In the interest of judicial economy, this court may exercise its judicial prerogative to enter the judgment the trial court should have entered. Rule 84.14; *Gentry v. Simmons,* 754 S.W.2d 579, 584 (Mo.App. 1988). Accordingly, this court orders that judgment be entered awarding Lynn $3.75 million in punitive damages.

In *Letz v. Turbomeca Engine Corp.,* 975 S.W.2d 155 (Mo.App.1997), and *Barnett v. La Societe Anonyme Turbomeca France,* 963 S.W.2d 639 (Mo.App.1997), this court entered judgment further remitting an award of punitive damages, affording the plaintiff the option of accepting a new trial. The remitted amount of $3.75 million is still related to the wrongful act. *Call v. Heard,* 925 S.W.2d 840, 849 (Mo.banc 1996). The award, however, is not grossly excessive within the limits of due process as expressed in *Gore,* 517 U.S. at 575, 116 S.Ct. 1589.

## C. PREJUDGMENT INTEREST

In its final two points TNT argues that the trial court improperly awarded prejudgment interest. First it asserts the trial court erred in failing to amend the judgment to eliminate prejudgment interest because it is not authorized in a sexual harassment case brought pursuant to the MHRA.[4]

TNT looks to the wording of Section 408.040.2 to assert that Missouri law does not authorize prejudgment interest in an MHRA action and that the statute only refers to interest in relation to tort actions. TNT further alleges that the MHRA statu-

tory scheme and, particularly, Section 213.111.2, provides for recovery of costs and attorneys' fees but does not provide for prejudgment interest. TNT alleges that the trial court, lacking statutory authority, erred in granting prejudgment interest on the compensatory damages.

The question whether the MHRA allows for prejudgment interest is answered in *Pollock v. Wetterau Food Distribution Group,* 11 S.W.3d 754, 771–72 (Mo.App. 1999). *Pollock* involved a sexual harassment claim brought by an employee against an employer for the continuing, unwanted comments made by her supervisor. *Id.* at 760–61. Pollock obtained a judgment, but the trial court did not allow prejudgment interest. *Id.* at 762. The eastern district of this court held:

> Although the MHRA does not explicitly authorize prejudgment interest, it is modeled after federal anti-discrimination laws, and thus federal law on the issue is strong persuasive authority. Under federal law, prejudgment interest should ordinarily be granted to victims of unlawful discrimination absent unusual circumstances making the award inequitable....The purpose of anti-discrimination laws is to provide "make whole relief," and prejudgment interest is included in this concept.

*Id.* at 771 (internal citations omitted).

Accordingly, the trial court properly granted the request for prejudgment interest.

In its final claim, TNT points out that the State of Missouri has a statutory lien against one-half of the punitive damages award, brought pursuant to Section 537.675.3, the proceeds of the lien to be deposited in the state tort victim's compensation fund. Under the statute, the lien

---

4. TNT does not argue any distinction in the applicability of interest between compensatory and punitive damages.

attaches in any case in this state that goes to final judgment and shall attach to the judgment after attorneys' fees and expenses are deducted. Section 537.675.3. Accordingly, TNT argues that only the amount of punitive damages that the plaintiff will receive should be subject to prejudgment interest.

TNT's argument that the plaintiff cannot be awarded interest on the half of the punitive damages on which the state has its lien, and that Lynn will not receive, is persuasive. In *Fust v. Attorney General for the State of Missouri*, 947 S.W.2d 424, 431 (Mo.banc 1997), the Court concluded that "a Missouri plaintiff never acquires a propriety interest in more than one-half of the punitive damages judgment." Again, subject to the same proviso pertaining to the above discussion on prejudgment interest being rendered moot, this court holds that if Lynn accepts this court's remitted amount, she may only receive prejudgment interest on one-half of the punitive award.

## III. CONCLUSION

The judgment of the trial court is affirmed as to the portion pertaining to compensatory damages, prejudgment interest thereon, and as to the submission of punitive damages. The judgment pertaining to the remittitur of the punitive damages award is reversed. If the plaintiff, Lynn, agrees, within fifteen days of this court's mandate, to remit the amount of punitive damages to $3.75 million, the cause will be remanded to the trial court for entry of a judgment, including pre-judgment interest on one-half that amount. Otherwise, the judgment for punitive damages will be reversed for a new trial. Costs are assessed to TNT.

All Concur.