HORIZON MEMORIAL GROUP,
L.L.C., and Bailey & Cox Family Funeral
Service, L.L.C., Appellants,

v.

Mark H. BAILEY, Defendant,

Memorial Park Cemetery Association
of Missouri and Henry W. Devry,
III, Respondents.

No. WD 68755.

Missouri Court of Appeals,
Western District.

Jan. 27, 2009.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 3, 2009.

Application for Transfer Denied
May 5, 2009.

R. Dan Boulware, Edwin H. Smith, St. Joseph, MO, for Appellants.

William J. Foland, Jr., Kansas City, MO, Frederick R. Edmunds, Overland Park, KS, for Respondents.

Before RONALD R. HOLLIGER, P.J.,[1] LISA WHITE HARDWICK, and JAMES EDWARD WELSH, JJ.

JAMES EDWARD WELSH, Judge.

Horizon Memorial Group, L.L.C. (Horizon) and Bailey & Cox Family Funeral Services, L.L.C. (Bailey & Cox) sued Mark Bailey for breach of their non-compete agreement and sued Memorial Park Cemetery Association of Missouri (Memorial Park) and Henry W. DeVry, III (DeVry) for tortious interference of the agreement. The jury found for Horizon and Bailey & Cox on both claims. The jury awarded them $439,273 in compensatory damages and $100,000 in punitive damages on their tortious interference claim, and the circuit court granted them an injunction prohibiting Mark Bailey from working for Memorial Park. Memorial Park and DeVry filed a motion for a judgment notwithstanding the verdict (JNOV)[2] on Horizon's and Bailey & Cox's punitive damage claim. Me-

---

1. Judge Holliger was a member of this court at the time the case was argued; however, he has subsequently retired from the court and did not take part in the outcome of this case.

2. Judgment nil obstat verdicto.

morial Park and DeVry also requested that the circuit court reduce Horizon's and Bailey & Cox's damage award for tortious interference because the circuit court's injunction and the circuit court's relieving Horizon and Bailey & Cox of paying the balance of a promissory note to Bailey cured them of their damages. The circuit court granted the motion and entered a judgment reducing Horizon's and Bailey & Cox's compensatory damages to $90,774 and eliminating the punitive damage award. On appeal, Horizon and Bailey & Cox raise eight points asserting that the circuit court erred in entering a JNOV on their punitive damage claim and reducing their compensatory damages to $90,774.

We affirm in part and reverse in part. We agree that the circuit court erred in entering Memorial Park's and DeVry's motion for JNOV on Horizon's and Bailey & Cox's punitive damage claim. We also agree that the circuit court erred in reducing Horizon's and Bailey & Cox's compensatory damage award by $268,499 on the basis that its grant of an injunction cured their damages. We find, however, that the circuit court was correct to reduce Horizon's and Bailey & Cox's compensatory damages by $80,000 and affirm that part of the judgment.

Bailey owned and operated the only funeral parlor in Lathrop, Missouri. In 2000, the Meierhoffer family, who own Horizon, a holding company that operates funeral parlors in Northwest Missouri, approached Bailey about purchasing his business. Between 2000 and 2002, the Meierhoffer family engaged in negotiations with Bailey for the purchase of his business. Eventually, Bailey agreed to sell his business for $800,000. As part of the sale, Bailey agreed to become the funeral director of Bailey & Cox, the company Horizon formed to operate its new funeral

home. The parties also entered into a non-compete agreement that prohibited Bailey from providing funeral services within a thirty mile radius of any funeral home owned by Horizon for ten years from the date of the sales agreement. The parties did include an exception to the non-compete agreement that allowed Bailey to work for Memorial Park at its Liberty location but only on the condition that Memorial Park did not otherwise engage in direct competition with Horizon and Bailey & Cox. In return for signing the non-compete agreement, Horizon and Bailey & Cox executed a promissory note for $100,000. The agreement did include a forfeiture clause, which stated that, in the event that Bailey breached the agreement, Horizon and Bailey & Cox would not have to pay Bailey the remaining balance on the note.

After the sale of his business, Bailey worked as the funeral director of Bailey & Cox. In June 2004, Bailey & Cox demoted Bailey because of his poor work performance. A few months later, Bailey submitted his resignation from Bailey & Cox. Bailey & Cox kept Bailey on the payroll until September 1, 2004. Thereafter, Bailey began working for Memorial Park at its Liberty location. After Bailey left Bailey & Cox, 38 percent of its pre-need clients transferred to Memorial Park.[3]

Around the same time, DeVry, the owner of Memorial Park, purchased a building in Lathrop with the intention of opening up a funeral parlor. The building was approximately a block and half from Bailey & Cox. In March 2005, DeVry obtained a license to operate the funeral home and performed his first funeral in Lathrop.

Horizon and Bailey & Cox filed suit in circuit court against Bailey, Memorial

---

**3.** A pre-need client is a person who prearranges his or her funeral arrangements. A pre-need client becomes an "at need" client when he or she dies.

Park, and DeVry. They sued Bailey for breach of their non-compete agreement and sued Memorial Park and DeVry for tortious interference of their agreement. Bailey filed a breach of contract counterclaim in which he alleged that Horizon and Bailey & Cox had defaulted on their promissory note and owed him the $80,000 balance.

The jury found for Horizon and Bailey & Cox on their tortious interference and breach of contract claims. The jury also found against Bailey on his breach of contract counterclaim. On their tortious interference claim, the jury awarded Horizon and Bailey & Cox $439,273 in compensatory damages and $100,000 in punitive damages. On their breach of contract claim against Bailey, the circuit court granted them an injunction prohibiting Bailey from working for Memorial Park for the duration of the non-compete agreement. On Bailey's breach of contract counterclaim, the circuit court, pursuant to the forfeiture clause in the agreement, entered an order relieving Horizon and Bailey & Cox from paying the promissory note's remaining $80,000 balance.

Memorial Park and DeVry filed a motion for a JNOV on Horizon's and Bailey & Cox's punitive damage claim. Memorial Park and DeVry also requested that the circuit court reduce Horizon's and Bailey & Cox's damage award for tortious interference because the circuit court's injunction and the circuit court's relieving Horizon and Bailey & Cox of paying the balance of the promissory note cured them of their damages. The circuit court granted the motion and entered a judgment reducing Horizon's and Bailey & Cox's compensatory damage award to $90,774. This appeal follows.

In their first three points, Horizon and Bailey & Cox assert that the circuit court erred in entering a JNOV for Memorial Park and DeVry, which set aside the jury's award of punitive damages on the basis that they failed to make a submissible case for punitive damages. These points are raised in the alternative, so, if Horizon and Bailey & Cox are correct on any one of them, we would be required to reverse the circuit court's judgment. Since we conclude that Horizon's and Bailey & Cox's third point is correct, we address that point only.

In their third point, Horizon and Bailey & Cox assert that the circuit court erred in entering a JNOV in regard to the punitive damage award because they presented evidence establishing a submissible case for punitive damages on their tortious interference claim. Specifically, they assert that they presented evidence from which the jury could have found that Memorial Park and DeVry acted with an evil motive and in reckless disregard for Horizon's and Bailey & Cox's rights and interests by hiring Bailey to work at their Liberty location and by opening a funeral parlor in Lathrop, which caused Bailey to violate his non-compete agreement.

 "A defendant is entitled to a [JNOV] only when the plaintiff fails to make a submissible case." *Porter v. Toys 'R' Us–Delaware, Inc.,* 152 S.W.3d 310, 315 (Mo.App.2004). Whether the plaintiff presented sufficient evidence to support his award of punitive damages is a question of law, which we review *de novo. Drury v. Mo. Youth Soccer Assn., Inc.,* 259 S.W.3d 558, 573 (Mo.App.2008). We review only to determine whether or not, as a matter of law, the plaintiff presented enough evidence to submit his claim of punitive damages to the jury. *Id.* In conducting this review, we view the evidence and all reasonable inferences that can be drawn from that evidence in a light most favorable to the verdict, and we disregard all contrary evidence and inferences. *Id.* There is a

presumption favoring the reversal of a JNOV, which can be overcome only if the evidence and inferences favorable to the plaintiff leave no room for reasonable minds to conclude that he made a submissible case. *Laws v. St. Luke's Hosp.*, 218 S.W.3d 461, 466 (Mo.App.2007).

In this case, Horizon and Bailey & Cox requested punitive damages on their claim against Memorial Park and DeVry for tortious interference with a contract. A claim for tortious interference with a contract requires the plaintiff to establish " '(1) a contract or a valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) intentional interference by the defendant inducing or causing a breach of contract or relationship; (4) absence of justification; and (5) damages resulting from defendant's conduct.' " *Envirotech, Inc. v. Thomas*, 259 S.W.3d 577, 590 (Mo.App.2008) (citation omitted). To establish the absence of justification element, the plaintiff must establish that the defendant lacked a legal right to justify his actions. *Id.* In making their claim for tortious interference, Horizon and Bailey & Cox presented evidence that Memorial Park and DeVry interfered with Bailey's non-compete agreement by Memorial Park's and DeVry's employing Bailey at their Liberty location and by Memorial Park's and DeVry's opening up a funeral parlor in Lathrop. The parties concede that Horizon and Bailey & Cox made a submissible case for tortious interference.

For years, it was thought that a plaintiff who made a submissible case for tortious interference necessarily made a submissible case for punitive damages. *Boyer v. Grandview Manor Care Ctr., Inc.*, 759 S.W.2d 230, 235 (Mo.App.1988). This is

because, for punitive damages, a plaintiff had to establish that a defendant acted with malice in law, which was defined as the " 'intentional doing of a wrongful act without just cause or excuse.' " [4] *Id.* (citation omitted). This type of malice did not require a plaintiff to establish that a defendant acted with any improper purpose. *Burnett v. Griffith*, 769 S.W.2d 780, 789 (Mo. banc 1989). In other words, this type of malice was the same standard that a plaintiff would have to establish to prove that a defendant acted in the absence of justification, which a plaintiff needed to prove for a claim of tortious interference. *Boyer*, 759 S.W.2d at 235. In subsequent cases, however, the Missouri Supreme Court clarified that a plaintiff did not make a submissible case for punitive damages merely because he made a submissible case for an intentional tort. Rather, the Supreme Court explained that a punitive damage claim rested on a different quantum of evidence and type of evidence than an intentional tort claim.

In *Rodriguez v. Suzuki Motor Corp.*, 936 S.W.2d 104 (Mo. banc 1996), the Missouri Supreme Court changed the quantum of evidence that a plaintiff needed to establish his punitive damage claim. Prior to *Rodriguez*, a plaintiff needed only to establish his punitive damage claim by the preponderance of the evidence, which was the same evidentiary standard a plaintiff had to meet to establish his cause of action. 936 S.W.2d at 109–10. In *Rodriguez*, the court found that a plaintiff must be held to a higher burden of proof on punitive damages and held that a plaintiff must establish his punitive damage claim by clear and convincing evidence. *Id.* at 110–11.

---

4. The *Boyer* opinion actually describes the intentional doing of wrong act without just cause as "legal malice." *Boyer v. Grandview Manor Care Ctr., Inc.*, 759 S.W.2d 230, 235 (Mo.App.1988). Many courts use the terms legal malice and malice in law interchangeably. *Burnett v. Griffith*, 769 S.W.2d 780, 788–89 (Mo. banc 1989). Malice in law, and not legal malice, is the intentional doing of a wrong act without just cause or excuse. *Id.*

In *Burnett v. Griffith*, the Supreme Court clarified the law regarding the type of evidence that a plaintiff needed to establish his punitive damage claim. 769 S.W.2d at 789. The *Burnett* court recognized that various Missouri courts had engaged in esoteric discussion regarding the type of malice that a plaintiff needed to prove to establish a punitive damage claim. *Id.* at 786–87. This resulted in "decisional disarray" and made it almost impossible for a court to instruct a jury on punitive damages. *Id.* at 786. The *Burnett* court cut through this confusion and adopted the language of the Restatement (Second) of Torts § 908(2) (1979), which stated that "[p]unitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or reckless indifference to the rights of others." *Id.* at 789. The *Burnett* court's adoption of this quality of evidence for punitive damages made the discussion of the various types of malice moot, at least as it concerns jury instructions.

 Under *Burnett*, the plaintiff can establish that the defendant had a culpable mental state to justify punitive damages by showing either that the defendant committed an intentional wanton, willful, and outrageous act without justification or acted with reckless disregard for the plaintiffs rights and interest. *Id.* When a person does an intentional act that is wrong and outrageous, he does so with an evil motive, which is enough to submit a punitive damage claim. *Drury*, 259 S.W.3d at 573. Similarly, when a person acts with reckless disregard for the plaintiffs rights and interests, the jury can infer that he did so because of an evil motive. *Id.* In that regard, it is not so much the

commission of an intentional tort but the defendants state of mind that forms the basis for a punitive damage award. *Burnett*, 769 S.W.2d at 787. Therefore, a plaintiff cannot submit a punitive damage claim solely on the basis that he established that the defendant committed an intentional tort. Rather, under *Burnett* and *Rodriguez*, a plaintiff makes a submissible case for punitive damages when he presents clear and convincing evidence from which a reasonable jury could conclude that the defendant had an evil motive. *See Drury*, 259 S.W.3d at 573.

 Horizon and Bailey Cox, therefore, did not present a submissible case for punitive damages merely because they presented a submissible case on their tortious interference claim.[5] Rather, to submit a claim for punitive damages on their tortious interference claim, Horizon and Bailey & Cox needed to present clear and convincing evidence that the conduct of Memorial Park and DeVry was outrageous and that they had an evil motive when they interfered with Bailey's non-compete agreement.

The jury returned a verdict awarding Horizon and Bailey Cox $100,000 on their punitive damage claim. In granting Memorial Parks and DeVrys motion for JNOV, the circuit court concluded that:

> Plaintiffs did not present substantial evidence at trial to establish that Defendants did not reasonably believe that the non-compete clause allowed Mark Bailey's employment at the Park Lawn Funeral Home in Liberty, Missouri, even after Defendants opened a new funeral home in Lathrop, Missouri.
>
> . . . .

---

5. Of course, any cases decided after *Burnett v. Griffith*, 769 S.W.2d 780, 789 (Mo. banc 1989), including *Downey v. McKee*, 218 S.W.3d 492 (Mo.App.2007), which state a submissible case for punitive damages is made

when the plaintiff makes a submissible case for tortious interference would be incorrect, and we could not follow them. The court *en banc* is aware of this statement and approves of it.

This Court finds that Plaintiffs have failed to present substantial evidence that Defendants acted with evil motive or reckless indifference to their rights, even considering the evidence in a light most favorable to Plaintiffs.

In its judgment, the circuit court did not grant Memorial Park's JNOV because Horizon and Bailey & Cox failed to present the appropriate quantum of evidence.[6] Rather, the circuit court granted Memorial Park's and DeVry's JNOV because Horizon and Bailey & Cox failed to present evidence that Memorial Park and DeVry had an evil motive. Specifically, the circuit court found that there was no evidence in the record to establish that Memorial Park and DeVry knew that Bailey's non-compete agreement prohibited him from working at Memorial Park's and DeVry's funeral parlor in Liberty if they opened a funeral parlor in Lathrop. We disagree.

In a light most favorable to the jury's verdict, Horizon and Bailey & Cox presented clear and convincing evidence from which the jury could conclude that Memorial Park and DeVry knew that Bailey had a non-compete agreement with Horizon and Bailey & Cox, which Bailey would violate if he worked for a funeral parlor that had a location in Lathrop, even if he worked at a different location.

At trial, Memorial Park and DeVry conceded that they knew about Bailey's non-compete agreement. In fact, DeVry testified that he wanted to employ Mark Bailey at his Liberty location but was concerned about Bailey's non-compete agreement. DeVry, therefore, met with Bailey's attorney, Robert McGinness, who read him the non-compete agreement and informed him that, under the agreement, it was permis-

sible for Bailey to work at Memorial Park's Liberty location. When McGinness told DeVry that this would be an acceptable arrangement, he did not know, and DeVry did not inform him, that DeVry was contemplating opening a funeral parlor in Lathrop. The evidence established that, a few weeks after this meeting, DeVry purchased a building in Lathrop to open a funeral parlor.

Given the proximity in time between these two events, the jury had a reasonable basis for concluding that when DeVry met with McGinness he knew that he was going to open a funeral parlor in Lathrop. The jury could have concluded that DeVry did not disclose this fact to McGinness because he knew that McGinness would tell him that his opening a funeral parlor in Lathrop would breach Bailey's non-compete agreement.

The record also established that, after DeVry's steps to open a funeral parlor in Lathrop became public, Horizon's and Bailey & Cox's attorney sent DeVry and Bailey numerous letters informing them that this action would put Bailey in violation of the non-compete agreement. DeVry went ahead with the opening of the Lathrop funeral parlor. Given the fact that Horizon and Bailey & Cox put DeVry on notice that his actions would result in Bailey's violating his agreement and that DeVry went ahead with the opening of the funeral parlor, the jury had a reasonable basis for concluding that, at best, Memorial Park and DeVry acted with reckless disregard for Horizon's and Bailey & Cox's rights and interests.

Although the circuit court examined this evidence and concluded that Memorial Park and DeVry did not act with reckless

---

**6.** In other words, the circuit court did not grant the JNOV because Horizon and Bailey & Cox presented a preponderance of evidence, but not clear and convincing evidence, justifying their punitive damage claim, which may be a conclusion more suited for a directed verdict.

disregard for Horizon's and Bailey & Cox's rights, the fact remains that, in a light most favorable to the jury's verdict, a reasonable juror could conclude from this evidence that Memorial Park and DeVry did act with reckless disregard, if not, outright evil motive. Thus, Horizon and Bailey & Cox presented enough evidence to submit their claim of punitive damages to the jury. The circuit court erred in entering a JNOV against Horizon and Bailey & Cox on their punitive damage claim.

■ In their fourth point, Horizon and Bailey & Cox assert that the circuit court erred in reducing the jury's compensatory damage award of $439,273 by $80,000 on the basis that Horizon and Bailey & Cox received duplicative damage awards. Horizon and Bailey & Cox assert that the circuit court erred in reducing the jury's compensatory damage award by $80,000 because the circuit court erroneously relied on the doctrine of remittitur. Horizon and Bailey & Cox claim that circuit court could not use the doctrine of remittitur to reduce their damages by $80,000 because the doctrine of remittitur applies only when the jury makes an honest mistake in weighing the evidence, not when a party receives duplicative damage awards.

In this case, Horizon and Bailey & Cox had two separate causes of action against two separate defendants. They sued Bailey for breach of their non-compete agreement and sought an injunction prohibiting Bailey from working for Memorial Park. They also sued Memorial Park and DeVry for tortious interference of contract based on the fact that they induced Bailey to violate the non-compete agreement. On this claim, they sought money damages resulting from Bailey's breach of the contract. After Horizon and Bailey & Cox sued Bailey, Bailey filed a counterclaim in which he alleged that Horizon and Bailey

& Cox breached the non-compete agreement when they defaulted on their promissory note. Bailey alleged that they owed him the balance of the note, which was $80,000.

In its verdict, the jury found for Horizon and Bailey & Cox on their tortious interference claim and awarded them $439,273. It also found for Horizon and Bailey & Cox on their breach of contract claim against Bailey and found against Bailey on his breach of contract counterclaim. The circuit court entered judgment on Bailey's counterclaim and found that Horizon and Bailey & Cox no longer owed Bailey the $80,000 balance on the promissory note. In its judgment, the circuit court concluded that Horizon's and Bailey & Cox's damage award for their tortious interference claim had to be "remitted" by $80,000. Specifically, the circuit court concluded that:

> At most, Plaintiffs' evidence supports a damage award of $90,774.00 against Defendants as a result of the tortious interference.... The sum also reflects a reduction of the $80,000 that Plaintiffs received as a credit in liquidated damages based upon their contractual arrangement with Mark Bailey. Plaintiffs' acknowledged that despite their numerous claims against all of the original defendants, they were only entitled to one recovery as a result of Mark Bailey's breach of his non-compete agreement.
>
> . . . .
>
> Therefore, the jury's damage award, accepting the evidence in the light most favorable to Plaintiffs, must be *remitted* to the sum of $90,774.00.[7]

Thus, the circuit court remitted Horizon's and Bailey & Cox's tortious interference damage award so they would not receive

---

7. We added the emphasis.

two recoveries for the same injury. The circuit court, however, confused the doctrine of remittitur with the doctrine of merger.

■ Section 537.068[8] governs the court's ability to remit damages. It says that:

A court may enter a remittitur order if, after reviewing the evidence in support of the jury's verdict, the court finds that the jury's verdict is excessive because the amount of the verdict exceeds fair and reasonable compensation for plaintiff's injuries and damages. A court may increase the size of a jury's award if the court finds that the jury's verdict is inadequate because the amount of the verdict is less than fair and reasonable compensation for plaintiff's injuries and damages.

Section 537.068. Under this statute, a court is authorized to order a remittitur if it finds that the jury's verdict is excessive because it "exceeds fair and reasonable compensation for [the] plaintiff's injuries and damages." This occurs only when the jury miscalculates a plaintiff's damages because it made an honest mistake when it weighed the evidence regarding the nature and extent of his injuries. *McCormack v. Capital Elec. Constr. Co.*, 159 S.W.3d 387, 394–95 (Mo.App.2004).

■ The doctrine of merger, on the other hand, is used to prevent a party from being compensated twice for the same injury. *BMK Corp. v. Clayton Corp.*, 226 S.W.3d 179, 197 (Mo.App.2007). It is well-established that while a single transaction may invade more than one right and a plaintiff is entitled to proceed on numerous theories of recovery, he is not allowed to be made more than whole or receive more than one full recovery for the same harm. *Id.* If a plaintiff asserts two causes of action and the damages are the

same, then the awards must be merged to prevent a plaintiff from gaining a double recovery. *Id.* This rule applies regardless of whether the injury arises out of a contract or tort. *Norber v. Marcotte*, 134 S.W.3d 651, 661 (Mo.App.2004).

Here, there was no allegation that the jury's damage award was excessive because the jury weighed the evidence regarding Horizon's and Bailey & Cox's injuries incorrectly so as to make the doctrine of remittitur applicable. Rather, the issue before the circuit court was whether or not Horizon and Bailey & Cox received duplicative awards so as to make the doctrine of merger applicable.

Horizon and Bailey & Cox agree that merger would be the appropriate procedural device to remedy a situation where a plaintiff received a double recovery. They maintain, however, that, because the circuit court cast its reduction of their award in terms of remittitur instead of merger, we must reverse the circuit court's judgment. Although Horizon and Bailey & Cox are technically correct that the circuit court could not have used the remittitur doctrine to reduce their award and should not have used the terminology associated with that doctrine, it is obvious to us that the circuit court really merged the two awards. We, therefore, see no reason to reverse and remand the judgment so the circuit court can enter a new judgment using the doctrine of merger to arrive at the same conclusion that Horizon's and Bailey & Cox's damage award must be reduced by $80,000. Thus, we will review the circuit court's judgment on its merits.

In their fifth point, Horizon and Bailey & Cox assert that the circuit court erred in reducing the jury's tortious interference damage award by $80,000 on the basis that they received an $80,000 credit in liqui-

8. Unless otherwise indicated, all statutory references are to RSMo 2000.

dated damages. They claim that the record establishes that the jury, in awarding them $439,273, had already taken into account the $80,000 liquidated damage award and reduced its award accordingly. In other words, Horizon and Bailey & Cox claim that the jury intended for them to receive $519,273 but knew that the circuit court would relieve them of paying the $80,000 on the promissory note so it awarded them $439,273. We disagree.

As we discussed above, the circuit court entered judgment on Bailey's counterclaim and found that Horizon and Bailey & Cox no longer owed Bailey the $80,000 balance on the promissory note. In its judgment, the circuit court concluded that Horizon's and Bailey & Cox's damage award for their tortious interference claim had to be merged with their $80,000 liquidated damage award on Bailey's breach of contract counterclaim. Specifically, the circuit court concluded that:

At most, Plaintiffs' evidence supports a damage award of $90,774.00 against Defendants as a result of the tortious interference.... The sum also reflects a reduction of the $80,000 that Plaintiffs received as a credit in liquidated damages based upon their contractual arrangement with Mark Bailey. Plaintiffs acknowledged that despite their numerous claims against all of the original defendants, they were entitled to one recovery as a result of Mark Bailey's breach of his non-compete agreement.

 Although Horizon's and Bailey & Cox's tortious interference claim and Bailey's breach of contract claim were separate causes of actions, the "nexus between the two causes of action [was] the breach of the contract[.]" *Ross v. Holton,* 640 S.W.2d 166, 173 (Mo.App.1982). This is the element from which Horizon's and Bailey & Cox's damages flowed. *Id.* It is well-established that the damages under a breach of contract claim and the damages

under a tortious interference claim are coextensive only with respect to the lost benefits of the contract which were a direct and natural consequence of the breach or within the contemplation of the contracting parties. *Id.* In that regard, Horizon and Bailey & Cox concede that, in this case, the damage awards for their tortious interference claim and the credit they received from the liquidated damage clause on Bailey's breach of contract counterclaim were coextensive because they arose from Bailey's breach of the contract and were awarded solely to compensate Horizon and Bailey & Cox for the lost benefits of their contract. They claim, however, that, while these two damage awards would normally have to be merged because they were coextensive, the circuit court should have not merged the awards. In particular, they assert that the record establishes that the jury, in awarding them $439,273, factored in the fact that Horizon and Bailey & Cox would be relieved of paying the $80,000 on the promissory note and, therefore, the jury reduced the damage award accordingly.

In support of this proposition, Horizon and Bailey & Cox point out that the jury was fully advised that if it found for Horizon and Bailey & Cox on their breach of contract claims then it had to necessarily find against Bailey on his breach of contract counterclaim. Horizon and Bailey & Cox also point out that the jury was advised that if it found against Bailey on his breach of contract counterclaim, the circuit court would enter judgment for Horizon and Bailey & Cox and they would no longer have to pay Bailey $80,000. Given this and given that the jury understood that Horizon and Bailey & Cox's tortious interference claims and breach of contract claims were predicated on the same breach, Horizon and Bailey & Cox claim that it is reasonable to assume that the jury intended for its tortious interference

award of $439,273 to be in addition to the $80,000. Thus, Horizon and Bailey & Cox conclude that the jury intended for Horizon and Bailey & Cox to receive a total of $519,273 in damages.

Horizon and Bailey & Cox are correct that the jury was fully advised that if it found that Horizon and Bailey & Cox were correct on their breach of contract claim against Bailey then it would necessarily have to find for Horizon and Bailey & Cox and against Bailey on his breach of contract counterclaim. Horizon and Bailey & Cox are also correct that the jury was fully advised that, given the forfeiture clause in the party's non-compete clause, if the jury found for Horizon and Bailey & Cox on Bailey's counterclaim, then the circuit court would find that Horizon and Bailey & Cox no longer had to pay Bailey the $80,000 balance on the promissory note. Horizon and Bailey & Cox, therefore, contend that it is reasonable to assume that the jury awarded a lower amount on Horizon's and Bailey & Cox's claim for tortious interference because the jury knew that the circuit court would relieve Horizon and Bailey & Cox of their obligation to pay Bailey $80,000. In making this argument, however, Horizon and Bailey & Cox ignore the circuit court's jury instructions.

The circuit court submitted jury Instruction No. 21 and No. 27, which were the verdict directors for Horizon's and Bailey & Cox's tortious interference claims. Instruction No. 21, the verdict director for Bailey & Cox's tortious interference claim, said:

Your verdict must be for Plaintiff Bailey & Cox Family Funeral Services, L.L.C. ("Bailey & Cox") on its claim for tortious interference with contract against Defendants Memorial Park Cemetery Association of Mo ("Memorial Park") and Henry W. DeVry, III, if you believe:

First, an Agreement for the Sale of Assets existed between Plaintiff and Defendant Mark Bailey which contained a restrictive covenant provision that was breached by Defendant Mark Bailey, and

Second, Defendants Memorial Park and Henry W. DeVry, III, knew of such contract, and

Third, Defendants Memorial Park and Henry W. DeVry, III, caused Defendant Mark Bailey to breach the contract with Plaintiff, and

Fourth, Defendants Memorial Park and Henry W. DeVry, III, did so intentionally and without justification or excuse, and

Fifth, Plaintiff Bailey & Cox was thereby damaged.

Instruction No. 27 was similar to Instruction No. 21 except for the fact that it named Horizon as the plaintiff. Along with these two instructions, the circuit court submitted two damage instructions, Instructions No. 23 and No. 29.

Instruction No. 23 said:

If you find in favor of Plaintiff Bailey & Cox Family Funeral Services, L.L.C. for tortious interference with contract against Defendants Memorial Park Cemetery Association of Mo. and Henry W. DeVry, III, under Instruction No. 21, then you must award Plaintiff Bailey & Cox Family Funeral Services, L.L.C. such sum as you believe will fairly and justly compensate Plaintiff for any damages you believe Plaintiff sustained as a direct result of the occurrence mentioned in the evidence.

Instruction No. 29 was similar to Instruction No. 23 except for the fact that it named Horizon as the plaintiff and referenced Instruction No 27. From these jury instructions, the jury was instructed that it was to award Horizon and Bailey & Cox a sum that it believed would "fairly and just-

ly compensate" them for "any damages" they sustained from Memorial Park's and DeVry's tortious interference claim. We must presume that the jury followed these instructions. *Goede v. Aerojet Gen. Corp.*, 143 S.W.3d 14, 20 (Mo.App.2004). Thus, by awarding Horizon and Bailey & Cox $439,273 on their tortious interference claims, we must presume that the jury believed that this amount would fairly and justly compensate them for their injuries. If the jury really intended for Horizon and Bailey & Cox to receive $519,273, then the jury would have been required to award them that amount under the instructions. Hence, given the damage instructions, we have no reason to believe that the jury really intended for Horizon and Bailey & Cox to receive a higher damage award. The circuit court, therefore, did not err in reducing the jury's tortious interference damage award by $80,000 on the basis that Horizon and Bailey & Cox received an $80,000 credit in liquidated damages.

In their sixth and seventh points, Horizon and Bailey & Cox present alternative points regarding the circuit court's reducing $268,499 from the jury's compensatory damage award of $439,273. Because we find the seventh point dispositive, we address that point only.

█ In their seventh point, Horizon and Bailey & Cox claim that the circuit court erred in reducing their damage award of $439,273 on their tortious interference claim on the basis that the circuit court's grant of an injunction prohibiting Bailey from working for Memorial Park cured their damages. Horizon and Bailey & Cox assert that the circuit court's grant of an injunction did not make them whole because the evidence at trial established that (1) even if Bailey cannot work for Memorial Park, Memorial Park has opened a Lathrop funeral parlor which has deprived Horizon and Bailey & Cox of revenue that they would have otherwise

received as the sole funeral parlor business in Lathrop, and (2) Horizon's and Bailey & Cox's projected damages included preneed clients who transferred to Memorial Park after Bailey went to work for it and that damage was sustained regardless of Bailey's continued employment.

As we noted above, Horizon and Bailey & Cox sued Bailey for breach of their noncompete agreement and sued Memorial Park and DeVry for tortious interference with the agreement. After the jury found for Horizon and Bailey & Cox on both claims, the circuit court entered an order enjoining Bailey from working for Memorial Park. Although these were consistent causes of action, the circuit court determined that, because the injunction prohibited Bailey from working for Memorial Park, the injunction abated Horizon's and Bailey & Cox's future damages. Thus, the circuit court concluded that, because the injunction and money damages rectified the same harm, they had to be merged to prevent Horizon and Bailey from gaining a double recovery. To prevent Horizon and Bailey & Cox from gaining a double recovery, the circuit court reduced the jury's damage award by $268,499. Specifically, the court found:

> Plaintiffs' damage expert based his damage calculation, in part, on a projection of anticipated damages for the entire remaining period of the non-compete, i.e., for a period of ninety-one months post-trial until September 1, 2014. The foundation of this projection was the assumption that Mark Bailey would continue in the employment of Defendants for that period and said employment would continue to cause damages to Plaintiffs' funeral home operation in Lathrop, Missouri. Yet, following the jury trial, Plaintiffs pursued their request for injunctive relief against Defendant Mark Bailey and obtained an order from this Court that Mark Bailey was prohibited

from working for or providing any services for Defendants as long as Defendants operated a funeral home at Lathrop, Missouri or at any other location within a thirty-mile radius of any of Plaintiffs' funeral home operations, other than at Park Lawn Northland Chapel in Liberty, Missouri. Mark Bailey has accepted the judgment of the Court and has resigned from his employment with the Defendants.

Consequently, by virtue of this injunctive relief, any jury award for damages to Plaintiffs can not [sic] extend beyond the effective date of this Court's injunctive relief because Mark Bailey will no longer be employed by Defendants and—absent the rankest speculation—could not be the cause of future damages to Plaintiffs' funeral home business in Lathrop, Missouri. . . .

. . . .

At most, Plaintiffs' evidence supports a damage award of $90,774.00 against Defendants as a result of the tortious interference. This calculation is based upon Plaintiffs' assumption that, absent the tortious interference, they would have received *all of the business of Park Lawn Lathrop Chapel* from the start of its business on March 25, 2005 through January 24, 2007. This remitted sum also includes an additional three months of projected damages of $18,951.00, *again accepting Plaintiffs' assumption that it should receive all of Park Lawn Lathrop Chapel's business,* until the entry of this Court's original judgment on April 18, 2007. . . . Plaintiffs acknowledged that despite their numerous claims against all of the original defendants, they were entitled to one recovery as a result of Mark Bailey's breach of his non-compete agreement.

We disagree.

The circuit court is correct that, in many cases, the damages from a breach of contract claim and a tortious interference claim will have to be merged as they are coextensive. *Ross,* 640 S.W.2d at 173. In this case, however, the circuit court's grant of the injunction prohibiting Bailey from working for Memorial Park did not make Horizon and Bailey & Cox whole because it did not abate their future damages. This is because Horizon's and Bailey & Cox's claim did not rest on the assumption that Bailey would continue his employment with Memorial Park. Rather, it was Horizon's and Bailey & Cox's theory of the case that, by purchasing Bailey's funeral parlor and prohibiting Bailey from competing in the area, they would have a near monopoly in the Lathrop area. Thus, because Memorial Park's tortious interference with the non-compete agreement with Bailey resulted in Memorial Park entering the Lathrop market, Horizon and Bailey & Cox will suffer future damages even if Memorial Park no longer employs Bailey.

Specifically, to prove that at the time they purchased Bailey's funeral parlor Horizon and Bailey & Cox had a reasonable expectation of capturing 100 percent of the Lathrop market, Horizon and Bailey & Cox called Dennis Rosonke, the chief financial officer of Meierhoffer Funeral Homes, and Michael Meierhoffer, the owner of Meierhoffer Funeral Home, as witnesses at trial. Both witnesses testified that, due to the small size of the Lathrop area and Bailey's established presence in the area, the area could not support another funeral parlor. And, in fact, Rosonke testified that, between 1995 and 2002, Bailey performed 100 percent of the funerals in Lathrop. Both witnesses testified that the only way another funeral parlor could expect to compete in the area was to purchase Bailey's business. Thus, instead of opening their own funeral parlor, Horizon and Bailey & Cox were forced to purchase Bailey's funeral parlor.

To maintain the Lathrop market, however, Meierhoffer and Rosonke testified that Horizon and Bailey & Cox needed to make sure that Bailey could not open a competing funeral parlor or go to work for another funeral parlor in Lathrop. Thus, to preserve their investment and maintain the Lathrop market, Horizon and Bailey & Cox negotiated the non-compete agreement with Bailey. Thus, by entering into a contract to purchase Bailey's business and restricting Bailey's employment, Horizon and Bailey & Cox had a reasonable basis for believing that they would perform nearly every funeral in the Lathrop area. In fact, from the date of purchase until 2004, Bailey & Cox performed 100 percent of the funerals in Lathrop. And, because the non-compete agreement prohibited Bailey from working for anyone else in the Lathrop area for 10 years, Horizon and Bailey & Cox had a reasonable basis for concluding that they would perform nearly every funeral in Lathrop until 2012.

Given this evidence, Horizon's and Bailey & Cox's theory of damages was that, if Memorial Park never induced Bailey to violate their non-compete agreement, Memorial Park and DeVry would have never entered the Lathrop market, and Horizon and Bailey & Cox would receive 100 percent of the revenue for funerals in Lathrop. Memorial Park, however, did induce Bailey to violate his agreement, which allowed it to move into the Lathrop market. Even though Bailey can no longer work for Memorial Park, the fact remains that Memorial Park has a Lathrop funeral parlor, which is taking business away from Horizon and Bailey & Cox. Thus, the negative effects of Memorial Park's tortious interference with the contract remain even though the circuit court enjoined Bailey from working for Memorial Park. *See Multi–Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.,* 108 F.3d 522, 528 (4th Cir.1997).

Furthermore, the evidence at trial established that, once Bailey left Bailey & Cox to work for Memorial Park, 38 percent of Bailey & Cox's pre-need clients transferred their contracts to Memorial Park. Meierhoffer testified that, in his 40 years of experience, less than one percent of his pre-need clients had ever transferred to another funeral parlor. Rosonke testified that the value of these pre-need contracts was $201,982.79. Rosonke did not include these in his present damage calculation. He testified that, if any of these people passed away during the 10–year period, the value of the lost business would be subsumed within their future damage calculation. Hence, because the damages from the loss of Horizon and Bailey & Cox's pre-need clients were not included in the present damage calculation and the circuit court abated Horizon's and Bailey & Cox's future damages, Horizon and Bailey & Cox never received compensation for this injury. And, since the harm had already occurred, the loss of these contracts was not dependent on Bailey's continued employment. For these reasons, the circuit court's grant of an injunction prohibiting Bailey from working for Memorial Park did not abate Horizon's and Bailey & Cox's future damages. The circuit court, therefore, erred in reducing the jury's damage award by $268,499.

In their eighth point, Horizon and Bailey & Cox assert that the circuit court erred in entering its judgment of remittitur, which reduced their judgment by $80,000, because, in doing so, it failed to give them the option of accepting the remitted amount or having a new trial. Thus, they ask us to remand the case back to the circuit court so it can give them the option of accepting the remitted amount or receiving a new trial.

█ Horizon and Bailey & Cox are correct that, pursuant to section 537.068,

the circuit court can order a remittitur but cannot compel it. *Lynn v. TNT Logistics North America Inc., et al.,* 275 S.W.3d 304, 311 (Mo.App.2008); *Ince v. Money's Bldg. & Dev., Inc.,* 135 S.W.3d 475, 478–79 (Mo.App.2004). The circuit court can only order a plaintiff to remit the amount or experience the burden of a new trial. *Id.* Thus, a plaintiff has the option of agreeing to the remittitur or facing a new trial. *Id.* Horizon and Bailey & Cox, therefore, would be correct that the circuit court could not remit their damage award by $80,000 without first offering them the option of a new trial.

As we held above, the circuit court did not "remit" the damage awards but merged the awards so Horizon and Bailey & Cox would not gain a double recovery. The circuit court, therefore, did not need to give Horizon and Bailey & Cox the option of a new trial.

In conclusion, we reverse the part of the circuit court's judgment that granted Memorial Park and DeVry a JNOV on Horizon's and Bailey & Cox's punitive damage award and that reduced Horizon's and Bailey & Cox's compensatory damage award by $268,499. We affirm the part of the circuit court's judgment that reduced Horizon's and Bailey & Cox's compensatory damage award by $80,000. The case is reversed and remanded to the circuit court to enter judgment that is consistent with this opinion.

All concur.